CRAWFORD VS THE EXECUTORS OF SIMONTON.

1. A p'ca of set-off shou'd disclose a state of facts, such as wou'd entit'e the party pleading it to his action, if he were p'aintff in the proseeution of a suit,—otherwise, the plea will be bad on demurrer.

2. Therefore, a plea, of set-off, t'at plaintiff's testator was a co-surety with defendant for a third person; that on the default of the principal, defendant executed his own note in di charge of the liabi ity of the sureties ; and that the plaintiff's testator executed his writing under sea , agreeing to pay his proportion either to defendant, or the origina. creditor,—not alleging, that the substituted note was paid;—he.d to be insufficient, en demurrer.

3. A judgment is conclusive upon all pre-existing matters of de-fence: and when such judgment is made the foundation of a new action, it is not allowable to interpose any plea, which might have been pleaded to the first action.

4. So, it was held, that, in an action upon a judgment of *North Carolina*, a c'aim could not be interposed by way of set-off, which appeared to have existed four years previous to the ori-ginal cause of action sued on, and nearly nine years previous to the rendition of the judgment.

5. The judgment of a sister State, when made the sub'ect of a suit here, is entitled to the same credit as a judgment of the courts of A'abama.

6. The matters determined by the record cannot be controverted by plea, nor is the judgment liable to be attacked from within.

7. Though matters extrinsic may be shewn, as by pleading, *per fraudem*,—satisfaction, or want of jurisdiction, in the cou t rendering the judgment.

8. The non-existence of a judgment, the subject of an action,

Crawford *vs.* the Ex'ors of Simonton.

or a variance in its statement in the declaration, must be taken advantage of under the plea of *nul tiel record.*

9. A replication to such plea shou'd aver, that there is such a record, and conclude, *prout patet per recordum.*

10. Where a defendant consents to submit an issue upon the plea of *nul tiel record* to a jury, he cannot afterwards be allowed to object, that he has been deprived of a trial according to the forms of law.

11. An exemplification of a foreign judgment is sufficient'y authenticated to authorise its admission in evidence, if the presiding magistrate of the court certify that it is in due form of law. The form of the attestation of the clerk is immaterial.

12. At common law, interest is recoverable upon a judgment.

13. If damages are sought to be recovered on a demand arising out of the State, and the rate of those damages is fixed by legislation;—the statute wou'd be the best evidence, and wou'd sufficient'y prove the extent to which they are to be admeasured.

14. Where a defendant offers no excuse for a de'ay of payment of a judgment, the p'aintiff is entit'ed to recover interest on the judgment, as damages; and where the va'ue of money is dec'ared by law, that va'ue must be the measure of damages.

15. Interest wi'l be a'lowed as well upon debts contracted abroad, if the *lex loci contractus* authorises it, as in this State.

Error to the Circuit court of Bibb county.

Debt on foreign judgment. The declaration set forth, that at the November session, eighteen hundred and twenty-eight, of the Court of pleas and quarter sessions for Iredell county, North Carolina, the plaintiffs below recovered a judgment for four hundred and one dollars, and eighty cents, debt, against defendant,—also, one hundred and twenty-three dollars and twelve and a half cents, for damages and costs.

To the declaration, defendants plead—

1. *Nul tiel record.*

2. Payment.

3. That the testator, at his death, was indebted to defendant one hundred and fifty dollars, upon a writing obligatory, made by testator on the first of January, eighteen hundred and twenty, at Iredell county, North Carolina, (without date,) certifying, that a note given by E. S. Kirksey, principal, the defendant, George Lee Davidson, and the said testator, securities, payable to the president and directors of the North Carolina Bank, dated seventh June, eighteen hundred and thirteen, at sixty days, for four hundred and fifty dollars, which said Kirksey had failed to renew or pay agreeably to the rules of the bank, and for which four hundred and fifty dollars, said defendant had given his own note to the bank, and agreeing as one of said Kirksey's securities, to pay said defendant, or the bank for him, one third part of the four hundred and fifty dollars, and avering that one third of said note was one hundred and fifty dollars, and that said writing obligatory *at the commencement of this suit, and at the time of pleading* said plea, was in full force, not paid, satisfied or otherwise made void, and that at the commencement of the suit, and at the pleading of the plea, there was, and still is, due and from said plaintiffs, as executors, to the testator thereon, said sum of one hundred and fifty dollars,—and also the further sum of two hundred and eighty dollars lawful interest thereon, making altogether, the sum of four hundred and thirty dollars, which said sum of four hundred and thirty dollars, so due and owing, defendant

Crawford vs. the Ex'ors of Simonton.

thereby offered to set-off and allow to plaintiffs, as executors, and prayed that the same might be deducted from the claim of plaintiffs.

The record stated that the plaintiffs took issue, in short, by consent, on the first and second pleas, and demurred to the third.

At Spring term, eighteen hundred and thirty-seven, the cause came on for trial. The demurrer to the third plea was sustained, and a verdict was found for plaintiffs, for the sum of five hundred and twenty-four dollars and ninety two and a half cents, debt; and damages assessed for its detention, to the amount of two hundred and sixty-two dollars, on which judgment was rendered.

The bill of exceptions stated, that on the trial of the case, the plaintiffs offered in evidence, a transcript of a record from Iredell county, North Carolina, with certificates of authentication, a copy of which transcript and certificates, were appended to the bill. The defendant objected to the transcript and certificates as evidence in the case, which objection was overruled, and to which he excepted. The transcript was the only evidence offered of the recovery of the judgment in North Carolina, by plaintiffs' testator against defendant. The plaintiffs offered in evidence, an authenticated copy of a statute of North Carolina, which was also appended to the bill. No other statute of that State was offered in evidence, nor any other evidence of what were the interest laws of that State.

The defendant asked the court to charge the jury, that to authorise them to compute interest on the said judgment, set forth in the transcript, plaintiffs ought to shew,

Crawford *vs.* the Ex'ors of Simonton.

that judgments rendered in North Carolina bear interest, —which charge, the court declined to give, but charged the jury, that the statute of North Carolina, offered in evidence, was sufficient to authorise the plaintiffs to recover interest, and that the plaintiffs were entitled to interest on the amount of the judgment, so stated as recovered in North Carolina, to be computed by them at *six per cent per annum;* to which charges as given, and declining to charge as requested, the defendant excepted, &c.

The transcript of the record from Iredell county, North Carolina, was authenticated by the following certificates:

"I, Absalom Simonton, clerk of the Court of pleas and quarter sessions of Iredell county, do hereby certify, that the foregoing is truly copied from the records in my office. In testimony whereof, I have hereunto set my hand and affixed my seal of office, at Statesville, this 25th day of May, 1833.

[Seal of office.]                    "A Simonton, Clerk."

"State of North Carolina, Iredell county.

"I, William King, presiding magistrate of the Court of pleas and quarter sessions of Iredell county, do hereby certify, that Absalom Simonton, Esquire, who has signed the foregoing certificate, is clerk of said court, and that his signature is in his own proper hand writing, and that the said certificate is in due form of law. Witness my hand and seal, this 25th day of May, 1833.

                    " William King, J. P. [seal."]

Crawford *vs.* the Ex'ors of Simonton.

The statute of North Carolina, and the authentication of the same, as appended to the bill of exceptions, were as follows:

" An act restraining the taking of excessive usury.

" Forasmuch as the settling of interest at a reasonable rate, will greatly tend to the advancement of trade and improvement of lands by good husbandry, with many other considerable advantages to this province; and whereas divers persons of late have taken great and excissive sums for the loan of money, goods and merchandise, to the great discouragement of industry, in the husbandry, trade and commerce of this province.

" We pray that it may be enacted.

" And be it enacted by his excellency Gabriel Johnson, Esquire, Governor, by and with the advice and consent of his majesty's council, and general assembly of this province,—and it is hereby enacted by the authority of the same, that no person or persons whatsoever, from and after the first day of May, which shall be in the year of our Lord one thousand seven hundred and forty-one, upon any contract to be made after the said first day of May, shall directly or indirectly take, for loan of any moneys, wares, merchandise, or commodities whatsoever, above the value of six pounds, by way of discount or interest, for the forbearance of one hundred pounds for one year, and so after that rate for a greater or lesser sum, or for a longer or shorter time, and that all bonds, contracts or assurances whatsoever, made after the time aforesaid, for the payment of any principal or money to be lent, or covenanted to be performed, upon or for any usury, whereupon or whereby, there shall be reserved

or taken above the rate of six pounds in the hundred as aforesaid, shall be utterly void, and that all and every person or persons whatsoever, which after the time aforesaid, upon any contract to be made, after the said first day of May, shall take, accept and receive, by way or means of any corrupt bargain, loan or exchange, shift or interest, of any moneys, wares or merchandise, or other thing or things whatsoever, or by any deceitful ways or means, or by any discount, covin, or device, or deceitful conveyance, for the forbearing or giving day of payment, for one whole year of, or for their money or other thing, above the sum of six pounds for the forbearing of one hundred pounds for a year, and so after that rate for a greater or lesser sum, or for a longer or shorter time, shall forfeit and lose for every such offence, the double value of moneys, wares, merchandise, and other things so lent, bargained, exchanged, or shifted, the one moiety of all which forfeiture, shall be to our sovereign Lord the King, his heirs and successors, for and towards the support of this government and the contingent charges thereof; and the other moiety to him or them that will sue for the same, by action of debt. bill, plaint or information. in any court of record within this province, wherein no essoin, protection or wager of law shall be allowed or admitted of."

"State of North Carolina,
      "Secretary of State's office.
"I, William Hill, Secretary of State in and for the State aforesaid, do certify, that the foregoing is a true copy of a law of this State, passed in the year of our

Lord one thousand seven hundred and forty-one, and that it is yet in force in this State. Given under my hand, this 30th day of January, 1835.

"W. Hill."

The plaintiff in error assigned for error—

1. The sustaining of the demurrer to the third plea;

2. Overruling the objection to the transcript of the record, from North Carolina, as authenticated, and in receiving the transcript in evidence;

3. In refusing to charge the jury, that evidence must be given that judgments in North Carolina bear interest before they could find interest on the judgment recited in the transcript;

4. In charging the jury, that the transcript of the statute of North Carolina, was sufficient evidence to authorise the jury to compute interest at six per centum on the amount of the judgment recorded in North Carolina;

5. In the several matters excepted to;

6. In not giving judgment on the plea of *nul tiel record;*

7. In submitting the plea of *nul tiel record* to the jury;

8. In giving judgment for plaintiffs below.

*J. B. Clarke*, for plaintiff in error.
*Moody*, contra.

*J. B. Clarke*, for the plaintiff, said—

Four questions are presented on this record:

1. Ought the demurrer to the third plea, to have been sustained?

2. Was the certificate of the clerk of the Court in North Carolina, sufficient?

3. Was the interest law of North Carolina offered in evidence, any evidence that judgments in that State bear interest?

4. Was there any disposition of the plea of *nul tiel record;* and *if so*, was the issue tried by the court or jury?

First—As to the *first* question, it seems only necessary to enquire, whether the instrument was such an one as debt could have been maintained upon. If so, the demurrer ought not to have been sustained. That debt would lie against the plaintiff below on that instrument, it is only necessary to recollect, that it was for a sum certain. Four hundred and fifty dollars was the sum the defendant below had bound himself to pay for the principal to the bank, one third of which sum the testator agreed to pay the defendant below, in the bank for him, which the plea states to be still due and unpaid.

Second—The certificate of the clerk ought to state, that it is a full and complete transcript of the record of the proceedings in the cause, stating the names of the parties. The certificate may be strictly true, and still not set out the whole record; nor does it purport to do so. It would not be good to a transcript sent up to this court for revision.

Third—The statute offered as the interest law of North Carolina, does not include judgments, which is neither a contract or assurance in a legal sense, and is not included in those terms—Wyman vs Mitchell, (1 Cowan, 316.) Judgments, at common law, do not bear interest; and it is only by virtue of a statute, that interest

can be collected on them.   Ought not then the plaintiffs
below to have shown direct proof that such was the
case in North Carolina?   It seems to me · they ought—
and in its absence, the court ought to have presumed that
the common law rule prevailed there.   If the jury could
give damages for the detention of the debt, when an ac-
tion is brought here, and a recovery in a sister State, in
the absence of any law, showing that judgments in such
State bear interest, it would not be because the law of
that state authorised interest on contracts at a fixed rate;
but because it was equitable and just that the plain-
tiff should have something for the detention of his mo-
ney,—the amount of which ought to be left to the discre-
tion of the jury trying the cause, under all the circum-
stances of the case.   No discretion, in this case, was
left by the Circuit court to the jury; but they were
charged that the statute of North Carolina offered in ev-
idence, was sufficient to authorise the plaintiffs below to
recover interest,  and that the plaintiffs were entitled to
interest on their judgment recovered in North Carolina,
to be computed by the jury at *six per centum per annum* .
on its amount,—leaving no discretion to the jury, but
settling every thing but the computation, and showing
clearly that his opinion was based upon the belief that
the statute offered was sufficient; whereas it did not con-
tain one word, which, by legal construction, could show
that judgments were within its terms.   The fixed rule
was clearly wrong, unless judgments were within this
statute, or other evidence had been offered, which the re-
cord shows, was not.

Fourth—There was no trial on the plea of *nul tiel re-*

cord;—*if so*, it was by the jury, which the record shows, —the jury finding the amount of the debt and damages for its detention. To avail ourselves of this objection here, it was not necessary that we should have objected in the court below. The silence of the defendant could not authorise the court to adopt an illegal mode of trial. But the defendant did object—he objected to the transcript statute, and excepted. The objection could never be necessary, where the record of itself shows the error.

*Moody*, for defendant in error, said—

The counsel for plaintiff in error, (defendant below,) makes four points.

1. Ought the demurrer to the third plea to have been sustained?

In pleas much certainty is required—more than in declarations. This plea is full of uncertainties and defects.

First—It claims four hundred and fifty dollars, which is alleged to be due by a *writing obligatory*, executed in eighteen hundred and twenty, by plaintiffs' testator; but it is left uncertain whether the promise charged to have been made, was in said writing, or merely verbal. It is uncertain when or where the promise to pay was made.

Second—It charges that testator agreed to pay one-third of defendant's note, but it does not shew when that note became due. At what time was testator to pay? From what time is interest to be calculated? Plea claims two hundred and eighty dollars interest. It should exhibit facts, that the court may see that defendant is entitled to that sum.

Crawford *vs.* the Ex'ors of Simonton.

Third—It does not appear that Crawford has paid the four hundred and fifty dollars. Testator agreed to pay Crawford, or the bank, one third of that sum. It was intended to secure him, so far, against loss.' He may not have had to pay it. Unless he has, he has no claim on plaintiffs. The plea does not shew that it is yet due.

Fourth—The original note, to which testator and defendant and another were securities, was due in eighteen hundred and thirteen, and from that time defendant seems to claim interest. But defendant subsequently gave his note for four hundred and fifty dollars, and in eighteen hundred and twenty, or *afterwards*, testator agreed to pay "one-third of said four hundred and fifty dollars." There is no agreement to pay back interest. Indeed, as defendant's note was for four hundred and fifty dollars, it may be supposed that the interest accruing previous to the time at which it becomes due, had been paid or remitted.

Fifth—If the claim set up in the plea, existed previous to the judgment in North Carolina, this defence should have been made in that suit. When a party has once had an opportunity of making a defence, and fails to do it, he cannst make it in a subsequent proceeding for the same cause of action. An executor, against whom a *scire facias* is issued, suggesting a *devastavit*, to render him liable out of his own personal assets, cannot plead *plene administravit*—and the only reason given is, that he might have done it in the first action—Toller's law of executors; Williams on executors, 1225-6; 1 Saunders, 219, C. note. In this case, Crawford did plead set-

7 P.                     16

Crawford *vs.* the Ex'ors of Simonton.

off in North Carolina—the record shews it—and the jury there expressly found "*all the issues*" against him. If he can now plead the same plea, he will have a second trial of the same facts. "It is an established rule of law, that a fact which has once been directly decided, shall not be again disputed between the same parties"—Norris' Peake, 63; 6 Mass. R. 277; 1 Peters' Cir. C. R. 202.

Sixth—It is laid down as a rule, that if an executor sue for a cause of action arising after testator's death, defendant cannot set-off a debt due to him from testator in his life-time—1 Tidd, 718; 2 Saund. Pl. 789. This suit is founded on a judgment obtained by plaintiffs, as exec'''tors, after testator's death; and the plea sets up a claim which it avers existed against the testator in his life-time.

2. Was the transcript of the record offered in evidence, sufficiently authenticated?

The counsel for plaintiff in error objects to the clerk's certificate, because it does not state that it is a "*full and complete transcript*," &c.—and he argues that a certificate, without such statement, would not be good to a transcript sent up to this court for revision. Did the counsel examine the certificate attached to the transcript which he has brought up in the case we are now examining? It contains no such statement. It simply states, that "these pages contain a *correct* transcript." Yet in this case, this court are examining the regularity of the proceedings below—so that there is greater necessity for requiring a "full and complete" transcript. But the courts in Alabama have no right to examine, and will not en-

Crawford *vs.* the Ex'ors of Simonton.

quire into the regularity of the proceedings in a suit in a sister State. Suits in North Carolina are conducted according to the laws of that State; with which the judges there, are supposed to be better acquainted, than the judges in another State. If the proceedings in the cause on the judgment in which the suit is founded, were irregular, the defendant then should have had them corrected by a higher tribunal in that State. The judgment, unreversed, is binding there. It should have equal validity in every other State—Peake's Ev. 67, note p; 7 Cranch, 483, 308; 6 Wheaton's R. 109; 3 Ibid 234; 10 Seargent & Rawle, 241.

The courts here can make but two enquiries. Had the court in North Carolina jurisdiction?—Hunt & Condry vs Mayfield, (2 Stewart's R. 124.) And did it render the judgment declared on? These questions are fully answered by the transcript objected to. It shews that the action was debt—that defendant acknowledged service of the writ—appeared and filed several pleas—and that there was a verdict and judgment against him—all set out and certified to be " *truly copied from the records,*" &c. To that transcript, this court will give "*full faith and credit.*"

Another view—To make a record in one State evidence in another, the attestation must not be according to the form of the State where it is offered; but of the State or court whence the record comes—and the only evidence of that fact is the certificate of the presiding judge—1 Washington's Cir. Ct. R. 352. The presiding judge certifies that the certificate objected to, "*is in due form of law.*" It is conclusive—Brown vs Adair, (1 Stew. & Por. 42.)

3. Was the interest law of North Carolina, offered in evidence, sufficient to authorise the charge of the court, as given?

If the statute offered in evidence, does not entitle the plaintiff below to interest, there is, I believe, no law of North Carolina that does. I have examined, and can find no statute among the laws of that State, which gives interest on judgments, *eo nomine.* The counsel for plaintiff in error refers to the case of Wyman vs Mitchell, (1 Cowen, 316,) for the purpose of shewing that a judgment is not a contract or assurance; but the *evidence* of a contract or debt. Let it be so considered. The judgment sued on, then, is evidence that Crawford owed plaintiffs below, in eighteen hundred and twenty-eight, the sum sued for—five hundred and twenty-four dollars, and ninety-two and a half cents; and it liquidates the debt. When a certain liquidated amount is shewn to be due from one to another, the law implies, that in justice, he promises to pay it—which is a "contract or assurance," within the terms of the statute proven to the jury—15 Johnson's R. 424; 2 Porter's R. 454; Moore vs Patten, Donegan & Co.

On the same principle, "a judgment, *when sued on,* bears interest"—6 John. R. 285; 5 Cowen, 612. At common law, sheriff, could not collect interest on a judgment, because there was no judgment for subsequent interest; but, *when sued on,* interest is given.

It is objected, that the court below charged the jury that the plaintiffs were entitled to interest at a specific rate—six per cent. Interest is to be computed according to the law of the State in which the contract is made,

Crawford *vs.* the Ex'ors of Simonton.

or the debt made payable; and it is necessary to prove that law, as other facts—Evans vs Clarke, (1 Porter, 388;) Evans & Erwin vs Dunlap, (1 Porter, 390;) Peacock vs Banks, (Ala. R. 387.) The court did right in charging the jury that the transcript of the statute read to them, was sufficient evidence to authorise the plaintiffs to recover interest. What other evidence could be given? It was surely evidence of the legal worth of money in North Carolina,—and the court did right in charging the jury, that the plaintiffs were entitled to interest—not according to the laws of Alabama, but at the lower rate of the State in which the money ought to have been paid, which was proven to be six per cent. Such was the substance of the charge.

4. Was the plea of *nul tiel record,* properly disposed of?

It is laid down, that "if matter of fact, as well as matter of record, be put in issue, the trial may be by jury"—2 Saunders' Pl. 724; Chitty's Pl. 476;—this case is within the principle. Here were several pleas, which required a jury.

But there is sufficient evidence that the court gave judgment on this issue. The bill of exceptions shews, that the plaintiff below, produced a transcript of the record sued on—that defendant objected to it—and that the court overruled the objection, and received the transcript, thereby passing judgment directly on the plea of *nul tiel record.* If it had been a different record from that declared on, the court would have sustained the objection, and rejected the transcript.

Crawford *vs.* the Ex'ors of Simonton.

COLLIER, C. J.—Three questions are presented by the record in this case—

1. Does the third plea disclose matter of legal defence?

2. Was it error to submit an issue upon the plea of *nul tiel record* to the jury, under the circumstances shewn by the bill of exceptions, and is the record well authenticated?

3. Is there error, either in the refusal of the Circuit judge to charge as requested, or in the charge as given?

First—The third plea is doubtless intended as a plea of set-off. It sets forth, that both the plaintiff in error and the defendant's testator, were co-sureties of a third person for the payment of money; that the principal having made default, the plaintiff made his own note payable to the creditor in discharge of their liability; in consideration of which, the defendant's testator made his writing under seal, by which he agreed to pay either to the plaintiff or the original creditor his proportion, being one-third of the sum for which they had been sureties. It is not alleged that the plaintiff in error has ever paid his substituted note, either in whole or in part. There is no time prescribed in the writing executed by the testator, for the payment of his proportion. He had the option to pay it either to the plaintiff himself, or to the holder of the plaintiff's note, and if paid to the latter before the discharge of the note, the payment would be good.

The plea should disclose such a state of facts, as would entitle the party pleading it to his action, if he were the plaintiff in the prosecution of a suit. Tested by

this rule, the plea is clearly insufficient. Such a decla-
ration would discover no cause of action; the defendants
might say, that "our testator had his election to pay ei-
ther you or your creditor, and that election you must
take from us by paying him yourself, before we are lia-
ble to your action."

But there is another objection to the plea equally
available. The set-off relied on, existed more than four
years previous to the *cause of action sued on in North
Carolina, and nearly nine previous to the rendition of the
judgment there.* The judgment is conclusive upon all pre-
existing matters of defence, and when made the foun-
dation of a new action, it is not allowable to interpose
any plea that might have been pleaded to the first ac-
tion—Moore vs Bowmaker, (4 Taunt. R. 379.) A judg-
ment rendered in a sister State, when made the subject
of a suit here, is entitled to the same credit as a judg-
ment of the courts of Alabama; and if a judgment of
the latter could be successfully defended against either at
law or in equity, the same grounds might be urged
against a judgment of another State—Winchester vs
Jackson, (3 Hayw. Rep. 316.) The matters determined
by the record, cannot be controverted by plea, nor is the
judgment liable to be attacked from within: yet it is
competent to shew matters extrinsic, which could not
have been presented earlier for adjudication—as by
pleading *per fraudem,* satisfaction, &c. So, it has been
repeatedly adjudged in this court, that a defendant might
insist upon a want of jurisdiction in the court rendering
the judgment—Mills vs Duryee, (7 Cranch R. 481;) Arm-
strong vs Carson, (2 Dall. 302;) Hunt & Condry vs May-

field, (2 Stew. R. 124;) Lucas vs Darien Bank, (2 Stew. R. 280.) In either view in which we have considered the plea, it is defective, and the demurrer to it well sustained.

Second—Where a plaintiff declares on a judgment, and the defendant intends insisting upon its non-existence, or a variance in its statement in the declaration, he must plead *nul tiel record*, and the issue on that plea is tried by producing the record itself—2 Saund. Pl. & Ev. 608. This plea concludes with a verification, and a replication to it, should aver that there is such a record, and conclude, *prout patet per recordum,* with a prayer that it may be inspected—2 Saund. Pl. & Ev. 754-5. No formal replication is shewn by the record in the case before us, but it is merely stated, that the attorney for the defendants in error took *issue* on the plea of *nul tiel record*, and other pleas, *in short, by consent.* As the form of this issue is not set out, we will intend it to be such as referred its trial to the court, rather than the jury.

The question then recurs, is the submission of the issue upon *nul tiel record* to the jury, an error in law? It is competent for parties to dispense with the appropriate modes of trial, or to substitute for the legally appointed tribunals, *some one of their choice,* for the adjustment of questions which concern themselves alone. From the bill of exceptions in the present case, it appears that the parties went to trial,—that the defendants in error, offered in evidence, a transcript with the certificates of authentication; which was objected to, &c. Now, although it is not expressly stated that the jury was chosen for the trial of the issue with the assent of the plaintiff,

Crawford *vs*. the Ex'ors of Simonton.

yet we think it may be fairly inferred, that he made no objection. And having voluntarily allowed the case to be submitted to the jury, and having, in effect, had a trial by the judge, as appears by the motion to reject the record, the plaintiff cannot now be heard to object, that he has been deprived of a trial according to the forms of law.

We consider the exemplification sufficiently authenticated to have authorised its admission in evidence. It is immaterial as to the form of the attestation of the clerk. The presiding magistrate of his court has certified that "it is in due form of law"—Brown vs Adair, (1 Stewart & Porter's R. 49.)

Third—The charge asked in the Circuit court, supposes, that interest can only be recovered upon those liabilities on which it is expressly given by statute. Such a notion is not well founded in law. Damages, in lieu of interest, are allowed at common law, for a default to pay money or deliver property, upon the principle, that the creditor should be compensated for the want of punctuality in his debtor in keeping him out of the use of money or property—McWhorter vs Standifer, (2 Porter's R. 519.) Accordingly, it has been held that interest is allowed on judgments, by common law, to the time of affirmance, or of a new judgment rendered—Sink vs Langton, (Doug. R. 748;) 2 Dane's Ab. 212. By the rules of the common law, Lord Ellenborough considered it to be within the general province of a jury, to give damages for the detention of a debt, and he therefore sustained a verdict, which allowed interest upon a statutable ascertainment of damages, for an injury to indi-

7 P. 17

vidual property, occasioned by a public improvement made by a corporation—1 Maule & Selwyn's R. 171, 3, 4, 5, 6; and in Givin and wife vs Whitaker, adm'r, (1 Har. & Johns. R. 755,) it is said that both by the decisions of the courts of Maryland and the English courts, every judgment for money, carries interest, unless otherwise agreed by the parties, or its terms forbid it. So, in North Carolina, it has been holden, that a plaintiff is entitled to interest on his judgment, if a new action is brought, up to the time of the rendition of the second judgment—2 Hayw. R. 26, 378. To the same effect, are Thomas vs Edwards, (3 Aus. 804;) Butler vs Stoneld, (8 Moore, 412;) and Prescott vs Parker, (4 Mass. R. 170.) In Atkinson vs Braybrook, (4 Camp. R. 380,) Lord Ellenborough considered, that interest was not in general recoverable on a foreign judgment; because it was a simple contract—S. P. 3 Price, 350. But, in McClure vs Dunkin, (1 East R. 436,) the Court of King's Bench determined, that in assumpsit, on a judgment, rendered *in* *Ireland,* it was competent to the jury to allow interest to the plaintiff, and that, in that respect, there was no difference between a foreign judgment and a judgment in a Court of record in England—To S. P. vide C. & P. 376. The only adjudication we have been able to find, which opposes the position, that interest is recoverable on a judgment at common law, is a case to be found in 4 McCord's R. 212, which, in our opinion, is outweighed not only by principle, but by the authorities we have cited.

In Moore vs Patton, Donegan & Co. (2 Porter's R. 451,) it was determined that a jury might, in their discretion,

Crawford *vs.* the Ex'ors of Simonton.

allow interest upon unsettled accounts, for goods, wares, &c. from the time they became due. And in Tate vs Innerarity, (1 Stewart & Porter's R. 33,) it was adjudged competent, upon common law principles, for parties to stipulate for the payment of a reasonable rate of interest ; and where it was not ascertained by contract, the rate might be fixed by the custum of the place where the contract was made.

From the decisions we have noticed, we educe as applicable to the case at bar, the rule—That the allowance of interest, except upon the particular liabilities embraced by statute, must depend upon the circumstances of the case. To avoid its payment, it is competent for a defendant to shew that he is not in fault for the non-payment of the principal sum ; as, that the plaintiff had been absent from the country, without having left a known agent, &c. But if the defendant offers no excuse for his delay, the plaintiff is entitled to recover interest, as damages. Where the Legislature have declared the value of money by law, that value must be the measure of damages, allowed in all cases for its detention, though the plaintiff may have been injured to a much greater extent.

And interest will be allowed by our courts, not only upon debts contracted within the State, but upon those contracted abroad, if the *lex loci contractus*, authorises it. Though the right to recover damages for the detention of a debt, exists at common law, yet, as that law does not prescribe what they shall be,—if the demand arises out of this State, it is necessary to shew the value of money where the contract was made, or to be perform-

ed.    If this has been done by an act of legislation, the statute would be the best evidence; if the value depends upon usage, it is competent to prove it.    In the case before us, the cause of action originated in a sister State, the common law of which, (because derived from the same original source,) we must suppose to be the same system of jurisprudence, as prevails with us; and, as we have shewn, entitles the defendants in error to damages. The statute of North Carolina was evidence to shew the legal rate of interest in that State, if not to prove that *as a law*, it entitled the defendants in error to damages. The common law had determined the latter question in their favor, and it was only necessary to show to what extent damages should be admeasured.    This was sufficiently proved by the statute, and without pretending to enquire whether the act embraces judgments in the designation of contracts or liabilities, we are satisfied that the court did not err either in refusing the charge asked for, or in that given.

The judgment is affirmed.