REPORT OF REFEREES
We the subscribers, being first qualified, as by law directed, and having heard the parties plaintiffs and defendant in the annexed rule of court, by their attorneys respectively, their proofs and allegations, and after maturely considering the same do report and say, we find there is nothing due the plaintiffs from the defendant, that the two testamentary accounts as passed by the *Page 525 
said Benjamin Burton, executor of David Burton, deceased, the first on the 2d day of December, A.D. 1857, and the second on the 1st day of June, A. D. 1860, to be correct, that the accompanying proposed account marked on the back thereof with the letter A which the Said executor offered as his third testamentary account on the estate of said deceased, we find to be correct and proper to be passed by said executor before and to be allowed by the register of wills in and for Sussex County. That the accompanying proposed account of the partnership between the said Benjamin Burton and David Burton who traded together as partners under the firm name of B. D. Burton, marked on the back thereof with the letter B, which was by consent of C. M. Cullen, attorney for the plaintiffs, and Jacob Moore, attorney for defendant, included in the trial of this cause and taken into consideration by us, and which explains the partnership item in the aforesaid proposed third testamentary account, being the last item therein on the debit side thereof, we find to be correct and proper to be allowed and filed in the office of said register of wills, as explanatory of said partnership item in said third testamentary account. That the calculation of interest in said account is made up to February 1, 1874, by agreement of the counsel for said parties. That we do award and report that the amount overpaid by said Benjamin Burton, as executor of said David Burton, deceased, beyond the assets received by him is nine hundred and twenty-four dollars and seventy cents, with interest from February 1, 1874. That he is entitled to the additional sum of one hundred and forty-three dollars and eleven cents which we decide it is proper to be allowed him as commissions on said third testamentary account hereafter to be passed by him before said register. And we do report and award that the estate of David Burton, deseased, is indebted to Benjamin Burton in the sum of one hundred and forty-three dollars and eleven cents as commissions aforesaid.
Witness our hands and seals this 11th day of April, A. D., 1874.
 JNO. R. MCFEE, [SEAL] SHEPARD P. MARTIN, [SEAL] HIRAM T. DOWNING. [SEAL] *Page 526 
Afterwards on the 21st day of April, 1871, George T. Truitt assigned the recognizance in the Orphans' Court of the complainant to George W. Willin, and in December of that year he and his wife moved from this State into the State of Maryland. Soon after the assignment Willin proceeded by a writ of scire facias to collect the share and amount due to them in her right upon the recognizance, and the suit in this case was commenced in the court below by a petition filed on behalf of the complainant for an injunction, which was granted, but was afterward on bill and answer filed dissolved, and decree was entered against the complainant.
Moore for the appellant. That the appellant, as executor of his brother, David Burton, having passed a third and final testamentary account on his estate, showing an overpayment by him upon it of ten hundred and ninety-seven dollars and eighty-one cents, and having sold all of his real estate under an order of the Orphans' Court of said county to pay his debts, for a less sum than that over-payment, the chancellor ad litem has erred in taking into consideration the amount of the real estate of the deceased at its annual income, and treating it as a reason why the appellant's account for necessaries furnished his daughter, Virginia C. during the period of her minority, was unreasonable and unjust and should not be allowed; and that too when in his decree he says it is clearly established that the appellant paid for the board, clothing, maintenance and education of the said Virginia C. for the greater part of the time from the death of her father to her marriage; thus admitting the correctness of the account, but at the same time disallowing it because her father owned real estate producing rents, all of which, both lands and income, was absorbed by his debts. The assignee of a bond, mortgage or recognizance takes it subject to all equities as between the original parties. 2 Johns. Chy., 441, 479; 2 Cow., 247; 9 Vez., 254; 1 Del. Chy., 244, 435. And a fortiori
Willin having notice of appellant's account against the said Virginia C. and of his claim that it should be allowed in payment and settlement of her share in said recognizance, took the assignment *Page 527 
of it subject to all the equities then existing between the original parties to it. But the assignment of her share in it by her husband Truitt to Willin was made with the fraudulent intent on the part of Truitt and Willin of preventing the appellant from collecting an account and indebtedness of hers to him which had been admitted by Truitt and wife to be just and due, and of preventing its allowance as a payment in full of her share in the recognizance. It cannot, therefore, be of any avail in a court of equity. 1 Story's Eq. Journ., §§ 349, 350, 351, 369, The items in the account are all for necessaries furnished her during her minority, and her implied promise and contract in law to pay for them is binding upon her. 1 Am. Lead. Ca., 244; Reeves Dom. Rela., 227, 228, 250; Cantine v. Phillips' Admr., 5 Harr., 428. Her promise and that of her husband to pay it to the appellant was made after she attained her majority, and that parol promise was of as high grade as the contract itself; but no express contract or promise to pay, need be proved to render an infant liable for necessaries. 3 Wend., 479; 4 Wend., 403. But Willin purchased her share in the recognizance with notice of the appellant's equitable claim by way of set-off against it, and therefore he will not be permitted in this court to protect himself against it. 1 Story's Eq. Journ., § 395; 5 Pick., 317; 12 Johns., 343; 14 S. R., 137. There was a special agreement made by the husband and wife with the appellant before the assignment to Willin, that his said account should be allowed and applied as a set-off to, and in full payment of the share and amount due the wife upon the recognizance. 1 Selwyn's N. P., 132. And Willin had notice of it before the assignment. But it is also in proof that Truitt and wife are insolvent. Waterm. on Set-off, §§ 442, 443; 10 Paige, 369; 2 Paige, 581; 4 Conn., 297; 1 Monr., 191; 11 B. Monr., 73. And it being established that Virginia C. owed the account to the appellant, the amount of it is properly applicable as payment of her share in the recognizance, first, because it was so agreed between them, and secondly, because the appellant had the right to so apply it, even, if he had been indebted to in an equal or greater amount as the executor of her father, in the absence of *Page 528 
any direction by her and her husband to apply it to the payment of the latter.
Cullen for the respondents. The set-off must be such that the party claiming the same could maintain an action thereon against the party who sues. 7 Porter, 110. If it be a debt in auter droit,
it cannot be set-off at law or in equity. 2 Paige, 402; 5 Mad. Chy. Rep., 279. As to equitable debts, or equitable on one side and legal on the other, where there is a mutual credit between the parties, on that ground alone set-off is allowed in equity, though in the existence merely of mutual debts without mutual credit, there is no set-off in equity even in cases of insolvency. 2 Story's Eq. Journ., § 1437; 8 Taunt., 499; 7 T. R., 376; 7 E. C. L., 861. But in respect to set-off, courts of equity are governed by the same law as courts of law. And this claim of set-off, if it was available as a defence at law, and the appellant by laches omitted to take advantage of it, equity will not relieve. 5 Mason, C. C. Rep., 202. The share of Virginia C. Burton in the recognizance vested by the marriage in her husband, and though he is bound to pay the debts of his wife contracted before their marriage, this claim of the appellant cannot be set-off, to a demand of the husband. 2 Pars. on Con., 245; Burrough v. Moss, 10 Barn. 
Cress., 558; Paynter v. Walker, 5 Mann. Ryl., 296; 19 Ves. Jr., 465; Smith v. Johnson, 5 Harr., 40. But the recognizance on which the scire facias was issued is against Benjamin, Peter R. and John H. Burton, and one recognizor cannot plead a set-off due to him separately and alone in such action. Chy. on Con., 848; 2 Pars, on Con., 245; 3 Wend., 400; 6 Cow., 261; 6 Conn., 14; 9 S. R., 379. But this case is cognizable in a court of law, and not in equity. Conner v. Pensington Cummins, 1 Del. Chy. Rep., 177; 1 Mad. Chy. Pr., 69, 70; 6 Ves. Jr., 136. No promise or agreement of Truitt and wife to allow the claim of the appellant as a set-off against, or as payment of her share in the recognizance, would be operative and binding upon them, unless it was made with a full knowledge of all the circumstances of the case. 3 Lead. Ca. in Eq., 267; 1 Lead. Ca. in Eq., 220; 4 Paige, 647. *Page 529 
There is an averment of the solvency of Truitt in the bill of complaint filed in the case, but the proof in it shows the contrary; the appellant should have sued, as he had a remedy at law, recovered judgment, had an execution upon it and a return of nulla bona thereon before going into the Court of Chancery. This court will not protect or overlook his shortcomings in that particular, for he cannot claim an equitable set-off against an assignee for a valuable consideration without a suit, judgment, execution and return as aforesaid. 5 Mason's C. C. Rep., 202. The account is not settled, and cannot be set-off in law or equity; there are vouchers for some bills paid; he claims however not only these, but for many other charges contained on a single and loose sheet without any book of account; and he does not state in his bill of complaint, or append thereto the amount of his claim which he alleges as a set-off, and there has been no opportunity to contest or controvert it. A court of equity will not fix a matter that should be settled at law. There is no equity as between these parties, no insolvency proved, and no right of action to recover as against the wife, for there was no mutual credit. And there were no equities existing against the recognizance in the hands of the assignee of it at the time of the assignment. And the complainant below seeking by equity to bring in as a set-off an account unsettled and unliquidated, never having reduced the same to a judgment against the recognizance, and no trial or opportunity had on the other side to plead thereto, had been guilty of gross laches therein.
Bayard for respondent. The substantial defence in this case is payment. And this is a legal defence, and was cognizable in a court of law as a defence to the scire facias on the recognizance at the suit of the respondent against the complainant. It was so held by the Court of Chancery in this State in the case of Conner v. Pennington and Cummins, 1 Del. Chan. Rep., 177. And it was the same if it was a matter of set-off. 5 Mason's C. C. Rep., 202, 212, 213, 214, 216. The assignment of a chose in action passes subject to all equities which relate to or inhere in the transaction itself, but not to purely independent equities. *Page 530 
The respondent, Truitt, the husband of Mrs. Truitt, the heir-at-law of David Burton, was the purchaser of the recognizance for a bona fide
valuable consideration, and was the lawful owner of it, and did not take his wife's interest in the recognizance under the will of David Burton, her father, but independent of it, and under the intestate laws of the State. The complainant was the surviving partner of the firm of B. 
D. Burton, but there was no evidence before the court that he ever accounted for their partnership business which he closed up after his brother's death as surviving partner. He was also his executor, and took his daughter, Mrs. Truitt, then a child between five and six years old, and without being appointed her guardian, proceeded to keep an account against her for support and education to the time of her marriage. He thereby became her trustee and his duty towards her and her estate and property during her infancy and immediately on the termination of his trust of it on her marriage, was a very strict and exact one, and such as a court of equity will always watch with the greatest jealousy to see that the trustee does not take advantage of his cestui que trust
in transactions of this kind under such circumstances, and if not proved to the court to be fair and just to the latter, it will allow thecestui que trust to repudiate the transaction. 1 Ld. Ca. in Eq., 220, Fox v. Mackreth. In this case the complainant never passed any account as guardian of Mrs. Truitt during the period of her minority, or ever submitted one to her until after her marriage, and yet he had in the meantime expended without any warrant whatever as her guardian in law, the whole of her capital in her maintenance and education. In the ex parte case, S. P. Bostic, 4 Johns. Ch., 100, Kent, chancellor, said the greatest difficulty in this case is the application to break in upon the capital of the infants' estate for their maintenance and education. He, however, granted it on the authority of the cases cited in support of the application, and added, but notwithstanding the authority of these cases, the master of the rolls in the modern case of Walker v. Witherell (6 Ves., 473), would not only not allow trustees, of their own authority, to impair the capital of the infant's estate, but said that it had rarely occurred that the court *Page 531 
itself had broken in upon it. His delay was also very unusual in settling the estate of his deceased brother and partner as his executor, which was only done after passing three accounts on his estate; the first on December 2, 1857, and the third and last on April 18, 1874, contrary to the provisions of the statute in such case made and provided, Rev. Code, 548, § 31, and as he was himself, during the whole of that time the sole representative of the minor daughter of his brother, it only made his dereliction of duty in that respect the greater and more justly suspicious of a design on his part to exhaust all of her capital, even to the last cent of the recognizance, in her maintenance and education.
Moore. It has been objected on the other side that there was not such a mutuality in the counterclaims of Benjamin Burton and Virginia Truitt that they can be set off against each other in a court of chancery. His account for necessaries furnished her in her infancy has now been brought into this court to be objected to for the first time, and is to be investigated and considered by this court. In the court below it was referred and submitted to competent arbitrators, such as John R. McFee, Esquire, and others, for adjudication, and before whom at the hearing of it, and before whom the junior counsel for the respondents, Mr. Cullen, appeared and tried the case before the arbitrators, who after fully hearing and considering it allowed the account, as it now appears in this court. But this assignment of the recognizance by Truitt to Willin was made by her husband to pay a debt of his own which he owed to Willin, which a court of chancery is never inclined to favor or sanction as against a wife when dealing with her separate maiden property, but rather treats him as a trustee of it for her benefit.
As to the mutuality between the account of B. Burton against her and her debt against him on the recognizance, he was the principal debtor in it, and that fact would not be overlooked in such a suit as this in a court of chancery, however many sureties may have been joined with him in the recognizance, for it was all his debt, and they were but sureties for him in it. *Page 532 
In the case of the State for the use of David Cannon v. Clement Layton and Sally, his wife, late Sally Cannon, administratrix of Wingate Cannon, deceased, 1 Harr., 324, which was an action of debt on her administration against them for the distributive share of David Cannon in the estate of his father, Wingate Cannon, deceased. The amount of it was small, less than thirty-five dollars, at his age of two years. Among other pleas there was a plea of payment and also of set-off on behalf of the administratrix, his mother, and the Superior Court held that an account which she had kept against him for necessary food and clothing furnished him during his infancy might be proved before the jury, although she had never been appointed his guardian, and the account set off exceeding the amount of his share, the defendant had a verdict.
The chief question in this case, as shown by the arguments of the solicitors on both sides, is this: Is the account of the complainant for necessaries supplied Virginia C. Truitt during her minority a proper subject of set-off in this court against the suit in the Superior Court of Sussex County of the respondent upon the recognizance of the complainant in the Orphans' Court of said county entered into by him as assignee of one of the tracts of land of his intestate mother, Polly Vessels? Payment it is not; for nothing is to be considered as such, and to be allowable under the plea of payment, but money or some valuable thing agreed by the creditor and debtor to be accepted as payment. In this case, then, the complainant's claim is a proper subject of set-off here, or this court will take no recognizance of it.
And here it is proper to observe that no objection was made in the several arguments before us, that the account of the complainant was not for actual necessities for the respondent, Virginia C. Truitt, during her minority; in fact, it seemed to be conceded that the account itself was not wrong. It would have been difficult to contend to the contrary, in view of the testimony of Mr. Charles M. Cullen as to what the respondent, Truitt, told him his wife had said in respect to the whole of it except a *Page 533 
few small items; of that of Daniel Burton as to what was said about it at the interview between the complainant and Truitt and wife at the house of John P. Burton on the of November, 1870, and the nature of the testimony of Mrs. Sophia Burton in relation to the same subject. There was, evidently, no dispute about the account, generally, at the interview, nor any disposition afterwards to gainsay it. It was treated as a correct account, except a few small items, and all the items have been proved but those representing articles furnished by the complainant's wife, amounting to about fifty dollars. The admissions and proofs together establish the account except as just mentioned, and thus it was, no doubt, that objection was not made in the argument to the account as such. We may, therefore, treat the claim of the complainant,minus the articles supplied by his wife and not proved, as right in itself.
Notwithstanding this, it is insisted, and the force of the argument of the counsel for the respondents seems to be directed chiefly to that point, that there is no ground for relief in equity, because adequate remedy could have been had at law by plea of payment to the sci. fa.
for Willin's use (if Willin were affected by the complainant's claim), or by plea of set-off and proof under it. It is true this defence is not made in the answers or by plea, and, strictly, it was too late to insist upon it in the argument; but assuming that it was not, there is obvious answer to it. I have already stated that nothing is pleadable as payment but money or something agreed to be accepted in lieu of it. This is all that can be shown under such a plea. No subject of set-off can be treated as in any sense payment, else the statutes of set-off were unnecessary; and this is an answer to the suggestion in one of the authorities cited, and upon which much was rested in this case — that set-off is a form of payment. So much for that position. With respect to the other, it is sufficient to say that set-off is not a good plea to a scire facias upon a recognizance in the orphans' court or elsewhere. If the action of debt were brought on a recognizance like this, set-off might be a proper defence, as in any other action of debt, and no objection could be made that the debts were not due in the same *Page 534 
right; for although a suit on the recognizance would be in the name of the State for the use, etc., yet the interest of the cestui que use
is a creature of law, and is therefore a legal claim. But to a scirefacias on a recognizance in the orphans' court the plea is no more proper than to a scire facias on a judgment, where, prior to the statute of 4th Anne, chap. 16, § 12 (which is in force in this State), even payment could not be pleaded. The statute of set-off does not apply to cases commenced by scire facias. Nul tiel record,
payment (since the stat. of Anne) and release are good pleas, but not set-off, which applies to cases where the debt yet remains to be proved and judgment recovered. Where judgment has already been recovered, as in the ordinary cases by confession, by virtue of warranty, of attorney or otherwise, or by suits on open claims, or where a recognizance for the benefit of individuals (as recognizances in the orphans' court) has been entered into, set-off cannot be pleaded at law, by reason of the very nature of the proceeding, which is to have execution; but relief must be had in a court of equity, where the technicalities and forms of the common law do not obtain. The writ of scire facias,
though in a certain sense an action, because it may be pleaded to, yet is not the kind of action meant in the statutes of set-off in England or in this State. The mutual debts "due at the time of action brought" are not debts arising after judgment recovered on recognizance entered into. No one, surely, would contend that set-off would be a good plea to asci. fa. on an orphans' court recognizance. Relief must, therefore, be had in a court of equity to get the benefit of deduction of a counter-claim. Judgment should have been recovered on it before judgment on the sci. fa. In that event the plaintiff in the former might apply to the equity side of the court, where judgement was afterwards rendered on the sci. fa., to set one off against the other. Morris v. Hollis, 2 Harr., 4.
Having determined that the claim of the complainant was not an available defence at law as payment, and could not be set-off in the suit upon the recognizance, the question is, can the Court of Chancery give him relief by way of set-off, or allowance, of such claim, against the suit on the sci. fa? *Page 535 
The chancellor ad litem in the reasons for his decree dissolving the injunction, while not controverting the fact that the account of the complainant was for, what in law are, necessaries; yet seems to think that, supposing he had relief in his court because of want of power to give it elsewhere, yet before he could claim it he should have established his account by a judgment at law. This would, unquestionably, be a sound view of the case, if there were in fact any serious dispute about the account; but I have pointed out, by referring to the testimony of Messrs. Cullen and Burton, and by that of Mrs. Burton, that there was no ground for any; and so the respondent's counsel evidently thought, for they made no point in this court that the account was not just, and did not contend that any charges were unproved, except those aggregating about fifty dollars for articles supplied by the respondent's wife. Leaving them out, there is more than enough left to counterbalance the claim under the recognizance at the time it was assigned to the respondent Willin. There was no necessity, therefore, to establish the account at law. And the facts of this case show that whatever admissions of the correctness of the account were made by the respondents, Truitt and wife, were not drawn from them in undue haste, or by any misrepresentation, or concealment. Mrs. Truitt was married on the 9th of August, 1870, and came of age on the following 19th of the same month. Not till about three months afterwards did the complaintant make any move whatever to have a settlement of his account and then it was with the husband as well as the wife, and at the house of her aunt who was no relative of him, but is a witness against him. In the meantime there was ample opportunity if Truitt had availed himself of it, to inquire into the condition of the estate of his wife's father, and the propriety and correctness of the charges for the necessaries supplied his wife. It would seem therefore that there was no attempt on the part of the complainant to entrap the respondents, Truitt and wife, into a settlement before they had time to look about them and prepare for it. In fact the point is not made directly in the pleadings, evidence, or arguments that the respondents were deceived by the complainant, but the most imputed is, that he, knowing all *Page 536 
about the estate ought to have informed them of it, before he undertook to get them to agree to his account, and that it should be set-off against or deducted from the recognizance. But this is insisted on simply as a reason why they should not be bound by an agreement to allow and deduct; and not that their admission of the correctness of the account, so far as it went, should not be held binding. The point insisted on seems to be, that he should have paid himself out of the assets of his brother's estate, he being executor of it, and not be permitted to deduct it from the recognizance. This calls forth an important fact admitted in the argument here, and sustained by the list of exhibits filed by the complainant in the court below, that in an amicable action between Truitt and wife and the complainant in the Superior Court of Sussex County entered on the 9th of August, 1871, there was a reference of everything connected with the settlement by the complainant of the estate of his deceased brother, the father of Mrs. Truitt, the partnership affairs of the firm or partnership between the brothers being taken into consideration by consent, by three of the best qualified men in the county, of large experience and excellent judgment, who found that the estate was indebted to the complainant in the sum of nine hundred and twenty-four dollars and seventy cents for over-payment by him beyond all the assets that came to his hands, including the proceeds of the sale of the real estate of his said brother, and in the further sum of one hundred and forty-three dollars and eleven cents for commissions (not before allowed him) on a testamentary account of the estate of said deceased. Their report was made to the April Term, 1874, of said Superior Court. If the estate of the deceased brother was a debtor to the complainant for payment of debts, etc., against it to the amount found by the referees (and the fact is not denied) and he was also entitled to the said sum of one hundred and forty-three dollars and eleven cents, then there was nothing out of which he could reimburse himself for the necessaries supplied his niece. Unless, therefore, he can have relief by way of set-off, or otherwise, against his recognizance now in the hands of the respondent, Willin, he will be without any means of repayment, the respondents, Truitt and wife, residing out of the State and having no property here. *Page 537 
It was a point made in the argument in this court, and much stress was laid upon that view in the chancellor's opinion, that the claim of the complainant is not such an equity as will justify the Court of Chancery in treating it as a set-off to the recognizance, and the opinion of Judge Story, sitting in the Circuit Court of the United States for the First Circuit, in the case of Grim v. Darling, 5 Mason, 201, is cited in support of that view. According to that distinguished judge, to warrant a set-off there must be mutual credits as well as debts; that is, there must not only be indebtedness one to the other, but some sort of understanding between the parties that one claim shall be deducted from the other; in other words, each gives credit to the other, because of his indebtedness to that other. This seems to restrict the privilege of set-off within very narrow limits; and if it could be made to apply to this particular case, it would place the complainant in a very unfortunate situation; for the pecuniary condition of the respondent, Truitt, was such, at the time of the assignment to Willin, that there was no prospect of getting anything out of him by execution. We have the testimony of Mr. Cullen that the respondent, Willin, in a conversation with him on the day he took the assignment from Truitt, told him that he was about to take it, and that he could "secure his debt in that way." From this language the inference seems warranted that it was the only way in which he could do it, and it certainly is a fact in the case that at that time Truitt was under execution, and there were suits pending against him. It was very prudent so far, then, for Willin to take the assignment. Now, if the complainant could not be allowed his set-off or deduction from the recognizance, he would be without any available remedy whatever. But if it should be recognized as law in this State that to make set-off valid there should be some understanding of mutual credit, or, as Judge Story calls it, "stoppage pro tanto," it is very plain none could have been had in this case; for the respondent, Virginia Truitt, was a minor during the whole time up to her intermarriage, and could make no agreement nor have any understanding whatever with the complainant about credit or stoppage. She could bind herself *Page 538 
for necessaries, but not further. Her power was the naked one of incurring liability for them, but nothing beyond. Clearly, then, the complainant will be utterly without relief unless he can get it in equity by way of set-off. But independent of this view, which is, however, sufficient, our statute of set-off only speaks of mutualdebts, omitting entirely the word credits, which was of so much importance, in view of Lord Mansfield, in the case of French, Assignee, v. Fenn, 3 Doug., 257, a bankruptcy case, where the set-off was allowed against the assignee. Here there were mutual debts; that is, the complainant owed the wife of the assignor her share of his recognizance, and she owed him for necessaries furnished her during her minority. He had no power to set off the debt he owed her, because ascire facias was issued to collect it by the assignee, nor could he plead it as payment, because, as I have shown, payment it was not; and there was, in fact, no plea under which he could avail himself of it. His claim, not growing out of hers, but being entirely independent of it, set-off is the only way of deducting it from it, and as that cannot be done at law in a scire facias on the recognizance, it must be a subject of equitable relief, like other rights, remediless at law. That it would be a proper subject of set-off against a claim under a recognizance, is shown by the case of The State, for the use of Cannon, v. Cannon's Admx., 1 Harr., 324, where, in a suit against a surety to recover a distributive balance of an intestate estate, the superior court in this State allowed proof to be made of necessaries furnished the plaintiff in his minority by his mother, who was the administratrix. This case establishes, that where a minor is supplied with necessaries, they may be deducted, even by a surety of the administratrix who supplied them, from the amount claimed in debt on her bond for a distributive balance; from which it follows that if the suit had been against her, instead of her surety, a set-off might have been pleaded, mutuality existing and the action being debt. In this case, then, it is the form of proceeding — sci.fa., and not debt — that would prevent the complainant from pleading his set-off, though it exists all the same. Now, it is the plainest law, that where a party has a just defence *Page 539 
to a suit, but is prevented or obstructed by some technicality or mere form from setting it up, a court of equity, which is no respecter of forms and does not notice technicalities, will arrest the career of the plaintiff at law till he allows the set-off, if it be of that nature, and altogether if it exceed his cause of action.
But it is contended that were it true that if Truitt and wife had proceeded on the recognizance, the complainant might set-off in equity his account for necessaries against their claim, yet here is the case of a bona fide assignee, and such course cannot be taken with respect to him. Two grounds are taken for this view: first,
that there is no equity here, because the complainant's claim is an independent one, and does not grow out of the transaction of the recognizance; second, that Willin is not, upon the evidence, to be charged with notice of the equity, if such existed. With respect to the first ground, we have to observe that, there being no relief at law for the complainant against this claim because of technicality, his right of set-off, which can only be enforced in equity, would be entirely defeated if such view should prevail. The equity of set-off, valid at law but unenforceable for want of right to plead it in thesci. fa., would be denied him, although the statutes of set-off are as operative in a court of equity as at law, where the former finds occasion to exercise its power with respect to them. Here, then, is an all-sufficient equity existing between the original parties, and the assignee of the right of the meritorious party is affected by it.
As to the second ground, it is sufficient to say, that there is no law of this State that clothes the party entitled to a share or the whole of a recognizance with the right to assign it away, so as to defeat any legal or equitable defence against it, to which the recognizor is entitled. Such a chose stands, in no sense, upon the same footing, as maturing commercial paper; but the assignee, takes it subject to all equities, and defences to which it was subject in the hands of the assignor. In other words he takes it the same as the assignor held it, and for no better title or interest; and it being non-assignable, legally speaking, the duty devolves upon him to inquire of the recognizor, like the assignee of a bond *Page 540 
of the obligor, if he wishes to be certain of what he is buying, whether there are existing any claims of payment, or set-off, or if there is any other defence against it. In the case of Robinson v. Jefferson's Admr., before Chancellor Ridgely in Sussex in 1823, he said, speaking of certain single bills which were the subject of the suit before him. "It should be remarked that these bills are not assigned according to the form of the act of assembly. The assignments are therefore, equitable only; and the bills are liable in the hands of the assignee to all the equities to which they are liable in the hands of the obligee. But even if they had been assigned according to the act of assembly, the assignee would have taken them subject to the same objections which might have been made against them by the obligor in the hands of the obligee. This is the well-known and established law, and the assignee before he takes the assignment of a specialty ought to inquire whether it be liable to any plea, discount, or impeachment whatever." Decree affirmed on appeal June Term, 1827, 1 Del. Chy., 245.
With respect to what was said in the argument about the complainant not having been appointed guardian of his niece, it is sufficient to remark that he was under no legal obligation to take upon himself that office. If he had taken it, however, the well-known and enlightened liberality of the Orphans' Court in this State is assurance that, in the case of a ward like Virginia C. Burton, belonging to a family of high respectability in the county of Sussex, and being designed, as was said, for a teacher, the judges of that court in that county would have allowed the guardian to expend for her support and education all that was necessary for that purpose, and to quite the extent that was done by the complainant.
In case where a minor has no guardian, and some one supplies necessaries, the question between them would be — were the articles sold and delivered, board furnished, education provided, medical attendance supplied, necessary for one in the circumstances of the minor as to rank in life, fortune, etc.; if they were, the fact that they exceeded the minor's income received by the party supplying them would be of but little moment. Though *Page 541 
a legal guardian may not exceed income without authority of the Orphans' Court — there being a tribunal to which he can apply for such power and which can grant it, and the statute prohibiting him from so doing without resorting to it — yet, where there is no guardian, a person, quasi such, may do it in the minor's interest — running the risk of the verdict of a jury, under instruction of the court what necessaries are, that his supplies were not necessaries in law, and were excessive in quantity and expensiveness.
It is therefore, ordered, adjudged and decreed that the decree of the chancellor ad litem be reversed; that the injunction granted in the case below be made perpetual, and that the respondents pay the costs in this court and in the court below in three months or that attachment issue.