# Singer Manufacturing Company v. McLean, *et al.*

### Action for Breach of a Contract.

1. *Agency; power of special agent.*—The acts or declarations of an

[Singer Manufacturing Company v. McLean, *et al.*]

agent not within the scope of the authority entrusted to him, or done by him while not in the exercise of such authority, are, as to the principal, *res inter alios acta*, and inadmissible in evidence against him.

2. *Same; same.*—An agent, whose single duty was "to make an inventory or check up the business" of a salesman, can not bind his principal by a declaration as to the amount due from such salesman, nor can he ratify a disposition of his principal's property by the salesman, or by accepting property of his principal relieve the salesman from liability for it; and evidence of such declarations or acts are inadmissible as against the principal.

3. *Same; power of general agent.*—One who is the managing agent for a foreign corporation at one of its branch offices and has general control and direction of the business of said corporation, within a certain territory, has authority to rent a store-house for the use of a salesman in conducting the business of his principal.

4 *Same; liability of principal notwithstanding agent violated his contract.*—Where in the employment of an agent who contracted to devote his entire time and attention to the business of his principal, and the principal rented a store-house for such agent to carry on his business, before the principal can be relieved of the liability for the rent of said store-house, on the ground that his agent violated his contract in failing to devote his entire time to the principal's business, there must be evidence of the actual breach of said contract by the agent and of consequent loss or damage to the principal.

APPEAL from the Circuit Court of Bullock.
Tried before the Hon. JESSE M. CARMICHAEL.

This suit was instituted on July 12, 1893, by the Singer Manufacturing Company, a private corporation, organized under the laws of the State of New Jersey, against D. A. McLean and J. P. Harris, surety on McLean's bond for the faithful performance by McLean of a contract executed by him and The Singer Manufacturing Company. The plaintiff claimed the sum of $119.27, for the breach of the conditions of the bond made by McLean and J. P. Harris, as one of his sureties, which bond was conditioned for the faithful performance by McLean of the contract which was entered into by him with The Singer Manufacturing Company, by which he became their agent, for the sale of machines. The complaint alleged "that the said D. A. McLean, during the month of April, 1890, became indebted to the plaintiff in the sum of $119.27, which said indebtedness accrued in the course of his employment by the plaintiff." The defendant pleaded the general issue, and a special plea of set-off, in which they alleged that the plaintiff was indebted to McLean, one of

the defendants, in the sum of $77.50. Issue was joined on these pleas.

On the trial of the cause, as is shown by the bill of exceptions, the plaintiff introduced a written contract, signed by D. A. McLean and The Singer Manufacturing Company on September 11, 1889. This contract recited the employment by The Singer Manufacturing Company of D. A. McLean as its agent at Union Springs, Alabama, for the sale of machines, and other articles manufactured by it; and that the said McLean was to faithfully perform such services required of him, which are set out at length in the contract, and honestly account for all moneys or things of value entrusted to him during his employment. It contained, among others, the following provision : "In consideration of this appointment, the said party of the second part [D. A. McLean] agrees to give his entire time and attention to the business." It was also set out in the contract that "the party of the second part [The Singer Manufacturing Company] further agrees to pay store rent at Union Springs not to exceed $5 per month." There was also introduced in evidence a bond executed by D. A. McLean, as principal, and J. P. Harris and S. Ramsey as sureties, for the faithful performance by said McLean of all the duties incident to his employment as representative of The Singer Manufacturing Company.

The testimony introduced by the plaintiff tended to show that the defendant, D. A. McLean, went into the employment of the plaintiff under the Montgomery office of said company, with headquarters at Union Springs, during the month of September, 1889, and continued in said employment under the written contract which was introduced in evidence, until March or April, 1890, and that during said time McLean made various sales of machines in the course of his employment.

A. G. Forbes, as a witness for the plaintiff, testified : "That he was, and had been for several years past, including the time covered by D. A. McLean's contract, the managing agent for the plaintiff, and was located at Montgomery, Alabama; that in the early part of 1890, plaintiff received a letter, which was offered in evidence, from defendant, J. P. Harris, notifying it that he would no longer be responsible under his bond for any more machines sent the defendant, McLean, or for any credit

extended McLean; that in consequence of this letter he, as the agent of the plaintiff, sent one Donald out to Union Springs from Montgomery to check the business done by said McLean; that the said Donald had no authority to make any settlement for the plaintiff with said McLean; or to receive from said McLean any machine or other property of the plaintiff in the hands of said McLean, that said Donald, at the time, had no statement of the account of the plaintiff against McLean, and was not authorized to make or enter into any settlement with said McLean, but was simply to make an inventory or check up the business of McLean and report to the Montgomery office."

D. A. McLean, upon being introduced as a witness for defendant, testified that when Donald came out to check up the business done by him for the plaintiff, and after they had finished checking up said business, Donald told him that he, McLean, owed the plaintiff $31, and proposed to accept the $31 from him in settlement of plaintiff's claim. The plaintiff objected to the testimony of said McLean, that Donald "told him he owed the plaintiff $31, and proposed to accept said sum from him in settlement," and moved to exclude such testimony from the jury, on the grounds, first, that there was no evidence that said Donald had any authority to make the settlement for the plaintiff with with McLean; second, because said testimony was irrelevant. The court overruled the plaintiff's objection, and the plaintiff duly excepted. D. A. McLean further testified "in reference to two new machines left by him on trial at two different houses in Union Springs, with which the plaintiff sought to charge him, that he proposed to deliver said machines to said Donald, and said Donald instructed him to leave them at said houses, and afterwards said Donald got said machines." The plaintiff objected to this testimony, and moved to exclude it from the jury, on the grounds, that it was irrelevant, and because there was no evidence showing that said Donald was empowered by the plaintiff to receive the said machines from McLean, or to authorize said McLean to leave the machines at the place mentioned. The court overruled this objection of the plaintiff, and to this ruling the plaintiff duly excepted. In the account which was offered as a set-off against the plaintiff's claim, there

was an item of $30 for storehouse rent, and in reference to this item McLean testified "that, for a short while after he went into the employment of the plaintiff, he occupied one part of a store in Union Springs with one E. A. Blue, and paid said Blue at the rate of five dollars per month rent; that about November or October, 1889, he moved out of Blue's store into an adjoining store which he rented from Dr. Fleming, at $7.50 per month, and continued to occupy said store until he quit doing business for the plaintiff; that during the time he was employed by the plaintiff he and a nephew had a small stock of groceries which was kept in the same store with the machines, and while in town he stayed in the store where the machines and goods were kept; that he did not devote his entire time to the machine business of plaintiff, but spent a portion of his time in attending to the store business of himself and nephew, during the absence of said nephew from the store. In the showing made by McLean as to what E. A. Blue, a witness for the plaintiff would testify if present, it was made to appear that E. A. Blue would testify "that Mr. Forbes, agent of The Singer Manufacturing Company, agreed to allow him five dollars per month for rent, as long as D. A. McLean kept the store house." The plaintiff objected to this testimony of the witness Blue, and moved to exclude it from the jury, on the grounds that there was no evidence before the jury that said Forbes had any authority to make such agreement for the plaintiff, and because the evidence showed that the contract between the defendant and plaintiff was in writing. The court overruled this objection and motion, and the plaintiff duly excepted. After the plaintiff and defendant had rested, the plaintiff moved the court to exclude from the jury all the evidence touching said item of house rent, "because the evidence showed that said McLean did not devote his entire time and attention to the business of the plaintiff." The court overruled this motion, and the plaintiff duly excepted.

Among the other instructions given by the court in its oral charges was the following: "The contract required the defendant to devote his entire time to the business of the plaintiff, and also provides that the plaintiff was to pay rent for a house for the use of the business, not to exceed $5 per month. If the defendant

did not devote his entire time to the business of the plaintiff, it would be unfair to the plaintiff to require it to pay five dollars per month rent, but the plaintiff would not be entirely relieved from the duty to pay such rent not amounting to $5 per month, as under all the circumstances and surroundings, as shown by the evidence, would be right and just." The plaintiff duly excepted to this portion of the court's general charge, and also excepted to the court's refusal to give the following charge requested by it : "If the jury find from the evidence that during the time Mr. McLean acted as agent for the plaintiff, he did not devote his entire time and attention to the business of the plaintiff, then the said McLean can't charge store rent to the plaintiff."

There was judgment for the defendant. Plaintiff appeals, and assigns as error the several rulings of the trial court upon the evidence, and the giving of the portion of the general charge excepted to, and the refusal to give the charge requested by it.

NORMAN & SON, for appellant.

D. S. BETHUNE, *contra*, cited *Piedmont & Arlington Life Ins. Co. v. Young*, 58 Ala. 476 ; *Steed v. Barnhill*, 71 Ala. 157 ; 3 Brick. Dig. 443, § 570, 3 Brick. Dig. 25, § 108.

BRICKELL, C J.—1. The acts or declarations of an agent, done or made while in the exercise and within the scope of the authority entrusted to him, affect and bind the principal. But acts or declarations not within the scope, or done or made while not in the exercise of the authority, as to the principal, are *res inter alios acta*, and inadmissible as evidence against him. As expressed by the only witness testifying in reference to the agency of Donald, his single duty was "to make an inventory or check up the business of McLean, and report to the Montgomery office." He was without authority to make any settlement with McLean, or to receive from him machines or other property belonging to the plaintiff. The relation between him and the plaintiff was that of a special agent, limited to a single transaction and limited in authority. The authority was to make an inventory or check up the business of McLean. As-

certaining its nature and extent, by taking it in connection with McLean's relation to the plaintiff and the business he had been transacting for it, there is no room for an extension of the authority beyond the mere taking lists or accounts of the machines or other property of the plaintiff in the possession or under the control of McLean, and of all machines or other property of which he had made disposition. The declaration imputed to him, that McLean owed the plaintiff $31, which he was willing to accept, was of a matter or fact he had no authority to ascertain, and it is not out of place to observe, a matter or fact he had not the means of ascertaining, unless he relied wholly on the books, or papers, or statements of McLean, for he had not any statement from the plaintiff of McLean's accounts. The declaration or admission, whichever it may be termed, was as to the plaintiff unauthorized, and should not have been received in evidence. And this is equally true of the declarations imputed to him in reference to the two machines McLean had left on trial at two different houses in Union Springs. If these machines subsequently came to the possesion of Donald, he was without authority to receive them ; and his receiving them being unauthorized could not relieve McLean from liability to answer for them.

2. The relation of Forbes to the plaintiff seems to be essentially different from the relation of McLean. As he expressed it, he was "the managing agent for the plaintiff, located at Montgomery, Ala." This is the entire evidence as to the nature and extent of his authority, and it is rather general and indefinite. But when considered in connection with the fact that the plaintiff is a foreign corporation ; with the character of the business in which it was engaged; that McLean was a salesman under the Montgomery office, and the letter of his dissatisfied surety, which induced the inventory or checking up his business, came to the possession of Forbes, we are of opinion he should be regarded as the general agent of the plaintiff, entrusted with the general control and direction of its business. A stipulation of the contract between the plaintiff and McLean was, that the plaintiff would pay not exceeding five dollars per month for a storehouse in Union Springs. The evidence of Blue, that Forbes agreed to pay five dollars per month

of the rent of the storehouse McLean occupied, was properly received. Having the general control and direction of the business of the plaintiff, the agreement was within the scope of his authority.

There is no merit in the contention of the plaintiff, that it was absolved from liability to pay the rent of the storehouse, because of McLean's neglect to devote his entire time and attention to the business of the plaintiff. It is not material to consider whether there is such interdependence or mutuality between the promise of the plaintiff and the promise of the defendant, as that the one would be relieved from liability, if the promise of the other was broken. If there is such mutuality, before the plaintiff could be relieved from liability for the rent, there ought to be tangible evidence tending to show an actual breach by McLean of his promise—a breach not merely of its words taken in their strictest literal sense, but in the sense in which they were used by the parties, and of consequent loss or damage to the plaintiff. There is an absence of such evidence, and we perceive no error in the rulings of the court below touching this contention.

For the error pointed out, the judgment must be reversed and the cause remanded.