[Byrne Mill Co. v. Robertson.]

# Byrne Mill Co., *v.* Robertson.

## *Action for Breach of Contract.*

(Decided Jan. 17th, 1907. 42 So. Rep. 1008.)

1. *Sales; Contracts; Construction; Payment.*—A contract provided for the sale of certain lumber to be delivered at S. and stating the price to be paid per thousand as fast as loaded on cars at end sixty days negotiable bankable paper. Held, the contract was not void for indefiniteness on the theory that no obligation was imposed on the purchaser to load the cars at M., nor was the phrase sixty days negotiable bankable paper meaningless, as the law would imply a reasonable time in the absence of any provision as to the time of payment.

2. *Same; Conditions Precedent.*—Where the contract declared that the party of the first part agreed to manufacture, sell and deliver lumber to the party of the second part from time to time, and the party of the second part is obligated to receive the lumber, and the price to be paid per thousand feet was stated, the stipulation to deliver was an independent covenant, and a condition precedent to the duty of payment, and a failure or refusal to deliver would constitute a breach for which an immediate action would lie.

3. *Same; Breach; Waiver.*—The right of a seller to terminate a contract of sale upon the refusal of the purchaser to perform by payment for goods already delivered, may be waived by words or by conduct.

4. *Same; Payment.*—The provision of the contract by which the first party agreed to manufacture and sell lumber to the second party at a certain sum per thousand feet as fast as loaded on the cars at M., for all lumber dressed or rough, "and all dry kiln lumber shipped by the second part previous to the erection and operation of the mill for planning by the second party," does not render the contract incomplete, in that it fixes the price for such lumbers as might be shipped previous to the erection of the mill; the phrase "previous to the erection and operation" is limited to the dry kiln lumber shipped, and not to all the lumber dressed or rough.

5. *Same; Assignment of Contract; Provisions for Personal Service.*—The contract provided that both parties should have the

right to assign the same, and that the party of the first part should have nothing to do with the kiln business. It also provided that the party of the first part should turn over to the party of the second part the dry kiln and sheds and other appurtenances thereto then in operation at first parties mill, and furnish the steam to dry .the lumber; the party of the second part agreed to furnish his skill and services in making the changes necessary for making more steam and in case the kiln should be destroyed, the party of the second part would give his skill and services in assisting to rebuild it. The party of the second part assigned the contract. Held, in an action by the assignee of the contract for damages because of the party of the first parts refusal to deliver the lumber, the complaint was not demurrable on the ground that the agreement contained an obligation for personal services by the assignor, and the transfer did not relieve him from performing the same. The provisions for personal service having no reference to the sale or purchase of the lumber.

6. *Damages; Speculative Damages; Breach of Contract.*—Where the contract required party of the first part to deliver certain described lumber to party of the second part that might be made by party of the first part "while operating his mill on other regular orders," no damages could be recovered in an action for damages for breach of the contract to sell and deliver, based on a prospective operation of the mill, such damages being entirely speculative.

7. *Statute of Frauds; Contracts not to be Performed Within the Year.*—The written contract provided that it should remain in full force for a year, but that the second party might at his .option renew it for an additional period of five years. Held, it was not necessary, to save the contract from the statute of frauds, that the parties thereto enter into a new writing.

8. *Pleading; Reference by One Count to Another.*—The first count contained an averment of the assignment of the contract, but the second did not. The second count adopted by reference the contract set out in the first count, but did not adopt averment of assignment of contract set out in the first count. Held, demurrable for failure to do so.

9. *Same; Striking Out Matter.*—Where the recovery is sought for speculative damages, in an action on the contract, and this appears from the complaint, motion to strike from the complaint that portion relating to such damages was the proper method of reaching the objectionable matter; or the objection may be taken advantage of by requested instructions or by objection to evidence.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action for breach of contract by appellee against appellant. The complaint was in the following language:

"Plaintiff claims of the defendant the sum of forty thousand dollars damages for the breach of a contract which is in words and figures as follows: 'This agreement, made and entered by and between J. W. Byrne, and S. E. Byrne, doing business under the name of the "Byrne Mill Company," party of the first part, and Warren Hamilton, party of the second part, witnesseth: The said Byrne Mill Company hereby agrees to manufacture, sell, and deliver to Warren Hamilton, and the said Warren Hamilton agrees to buy and receive from the said Byrne Mill Company, at their mill near Stockton, Ala., the following lumber, to wit: All of the sap boards, other than what is known as "mill culls," they may make while operating their mill on other regular orders. The said Warren Hamilton is to receive said sap boards as they run, consisting of number 2 common and better, and also any boards that will not grade heart face; widths of said sap boards to run from three inches and up, and length of ten, twelve, fourteen, sixteen, eighteen and twenty feet, but no more than ten per cent. to run ten feet. The said Byrne Mill Company agrees not to select or pick out anything from the side board run of the mill except what will go 1x4 and up heart face; but all the sap boards of all widths are to be considered in this agreeemnt, and are to be delivered as they run at the end of the roller way at the end of the dry kiln at said mill. The Byrne Mill Company agrees to furnish and turn over to said Warren Hamilton the dry kiln and sheds and all appurtenances thereto belonging that are now in operation at their said mill, everything complete, and to furnish the steam day and night in sufficient quantities to dry the lumber to the requirements and satisfaction of said Warren Hamilton, free of cost to him, except that said Warren Hamilton agrees to furnish his skill and service in making changes necessary for making more steam for said kiln. The said Byrne Mill Company also agrees to furnish any lumber necessary for the erection of more room for storing the dry-

kiln lumber, should more room be necessary, or for any other improvement said Warren Hamilton may desire to make. The said Byrne Mill Company further agrees to furnish the necessary power during the term of this contract for the purpose of operating a plaining-mill business by the said Warren Hamilton; the said power to be furnished free of rent or costs to the said Warren Hamilton, he agreeing to make from time to time all necessary minor repairs to said power at his expense, as it is understood that the said Byrne Mill Company will have nothing to do with the plaining-mill and dry-kiln business, but said Warren Hamilton shall have full charge and control of everything pertaining to said dry kiln and planing mill. The price to be paid by the said Warren Hamilton for the sap boards shall be $5.50 per thousand feet superficial (no odd lengths counted), as fast as loaded on cars at Mobile, 60 days negotiable bankable paper for all lumber, dressed or rough, and for all dry-kiln lumber shipped by said Warren Hamilton previous to the erection and operation of his planing mill. This agreement to remain in full force and effect for one year; but said Hamilton has the right to renew the same for five years additional. It is distinctly understood and agreed that the said Hamilton and the Byrne Mill Company has the right to transfer or assign this contract, and all rights and liabilities assumed herein to any person or persons. It is further understood and agreed that, if said dry kiln is destroyed or damaged by fire or by the elements, then the same shall be repaired or rebuilt by the said J. W. Byrne and S. E. Byrne, doing business as the Byrne Mill Company. Said Hamilton, in the event of the destruction of said kiln, agrees to give his skill and attention as a mechanic to rebuilding the same. It is further agreed that, if the dry kiln is destroyed, the said Hamilton has the option not to take the sap boards until the dry kiln is rebuilt. This agreement is executed in duplicate this the 21st of November, 1901. (Here follows the signatures and witnesses.) It is understood that the power referred to, to be furnished by the said Byrne Mill Company, is the water power as now existing at their said mill. Which said contract was assigned by Warren Hamilton to

plaintiff, and was renewed for an additional term of five years as provided for in said contract. And plaintiff avers that the defendants broke said contract, in this: That they failed and refused to sell and deliver to plaintiff any lumber or boards made by them at their sawmill after November 21, 1902, and on, to-wit, December 2, 1903, notified plaintiff that they would not further perform said contract, although the defendants intended to, and did, after the 21st day of November, 1902, continue to operate said mill on regular orders down to the bringing of this suit, and expected and intended to operate the same thereafter, and did, in so operating said mill, make prior to the commencement of this suit a large quantity of lumber of a character that the defendants had by their contract agreed to sell to the plaintiff, to wit, two million of feet of such lumber, and would thereafter during so much of a period of five years from the 21st day of November, 1902, as was subsequent to the bringing of said suit, make, in such operation of their said mill, an additional large quantity of such lumber, to wit, sixteen million feet thereof, to the plaintiff's damages as aforesaid.

"(2) Plaintiff claims of the defendants the further sum of forty thousand dollars damages for the breach of a contract which is set out in the first count hereof, and is here referred to and made a part of this count, and plaintiff avers that defendants broke said contract in this: That they failed and refused to sell and deliver to plaintiff any lumber or boards made by them after November 21, 1902, and on, to wit, the 2nd day of December, 1903, notified plaintiff that they would not further perform said contract, although the defendants intended to, and did, after the 21st day of November, 1902, continue to operate their said mill on regular orders down to the bringing of this suit, and expected and intended to operate the same thereafter, and did, in so operating said mill, make prior to the commencement of this suit, a large quantity of lumber of a character that the defendants had by their contract agreed to sell to plaintiff, to wit, two million of feet of said lumber, and would thereafter, during so much of the period of five years from said 21st day of November, 1902, as was sub-

sequent to the bringing of this suit, make, in such operation of their sawmill, an additional large quantity of lumber, to wit, sixteen million feet thereof; and plaintiff avers that he has at all times been ready, willing, and able to receive and pay for all of said lumber in the manner provided in said contract, and to do all other things that he was obliged by the terms of said contract to do."

The defendant moved the court to strike from each count of the amended complaint filed herein so must of said counts as claimed damages for and on account of the refusal of defendants to sell and deliver to the plaintiff lumber manufactured and to be manufactured subsequent to the institution of this suit, upon the ground that the right of plaintiff to purchase said lumber by virtue of the terms of the contract set out in said complaint accrues and comes into existence only after the lumber has been manufactured in the manner contemplated by said contract, and also upon the further separate ground that it is impossible to know at any given time whether any, and, if so, how much, lumber covered by said contract will be thereafter manufactured by the defendant, and also upon the further ground that the contract set out in said complaint imposes upon the defendant only a conditional obligation to sell lumber to the plaintiff, and such obligation becomes absolute only after the condition has been performed. This motion was overruled. The defendants then demurred to the first count, because the agreement set out in the said contract is too indefinite and contradictory in its terms to be enforced; the alleged agreement shows on its face that the only obligation of defendants to manufacture lumber was to manufacture what they may make, which expression is without meaning; the agreement fails to show a complete contract or agreement between the parties, in that it states the price to be paid for the lumber only previous to the erection and operation of a planing mill, and fails to state any price for the lumber after the erection and operation of the plaining mill; because the method of payment in the agreement made a part of said count is unintelligible; because the agreement cannot be enforced, the only obligation of the plaintiff to

pay for the lumber mentioned therein being based upon a contingency which may never happen; because by the agrement the lumber shall be paid for as fast as loaded on the cars at Mobile, 60 days negotiable bankable paper, and provides no other time for payment, yet it contains no obligation on the part of the plaintiff or of the plaintiff's transferror to ever bring the lumber to Mobile; said agreement contains an obligation for personal service of a skilled character by the said Warren Hamilton, and the transfer of the alleged contract does not relieve the said Warren Hamilton from personally performing the said services yet the complaint fails to aver the performance thereof by the said Warren Hamilton, or a readiness on his part to perform. The defendant demurred to so much of first count as seeks to recover damages for a failure on the part of defendant to sell and deliver the plaintiff lumber manufactured and to be manufactured after the institution of this suit on the same grounds set out in the motion to strike. These demurrers were overruled as to the first count, and were interposed and overruled to the second count. The defendant then filed a number of special pleas raising the same defenses as were interposed by demurrer and motion to strike, to a great many of which demurrers were sustained; but the above pleading is sufficient for proper understanding of the opinion.

There was judgment for plaintiff in the sum of $2,160, and the defendant appeals.

STEPHENS & LYONS, for appellant.—The contract is unintelligible and unenforceable because it is impossible to ascertain therefrom the character of security or paper to be taken for the purchase price of the lumber.— 5 Cyc. 226; *E. P. A. Co. v. M. E. L. Co.*, 70 N. W. 650. The contract is unintelligible as to place of payment.— *Cross v. Scruggs*, 115 Ala. 258; *Randell v. Johnson*, 42 Am. Rep. 365; *Newnez v. Davell*, 19 Wall 560; 8 Rose's Notes, 269; *Keenan v. Lindsey*, 127 Ala. 270. An executory contract for the sale of chattels is incomplete until the price is agreed upon.—*Sheally v. Edwards*, 73 Ala. 175; *Wilkinson v. Williamson*, 76 Ala. 163; *Mainer v. Appling*, 112 Ala. 663. To maintain an action on a con-

tract the fulfillment of the condition precedent must be alleged and proven.—*Bell v. Real Estate & Banking Co.,* 3 Ala. 77; *Flouss v. Eureka Co.,* 80 Ala. 30; *Redmond v. Aetna,* 4 N. W. 591; *Chambers v. N. W. I. Co.,* The entire right upon which a suit is based must exist at the time the suit is brought.—*Donaldson v. Waters,* 30 Ala. 175; *Russell v. Gregory,* 62 Ala. 454; *Goodman v. Winter,* 64 Ala. 410; *Seisel & Co. v. Folmar & Son,* 103 Ala. 491; *McCrary v. Chase,* 71 Ala. 540; *Burns v. Campbell,* 71 Ala. 271; *P. & M. M. I. Co. v. Selma Sav. Bk.,* 63 Ala. 585; *Hill v. Hill,* 10 Ala. 527; *Vaughn v. Vaughn,* 30 Ala. 329; *Land v. Cowan,* 19 Ala. 297; *Stein v. Burden,* 24 Ala. 130.

A charge predicating plaintiff's right to recover upon proof which falls short of covering all his case is erroneous.—*Miller v. Clay,* 57 Ala. 162; *Bane v. The State,* 61 Ala. 75; *Roland v. The State,* 55 Ala. 210. The duty was upon the court to construe the written agreement and the court erred in submitting the construction of it to the jury.—*Southern Express Co. v. Cook,* 44 Ala. 468; *Klaghorn v. Lingo,* 62 Ala. 230; *Bernstein v. Humes,* 60 Ala. 582; s. c. 72 Ala. 546. The court erred in giving charge A. and in refusing the several affirmative charges requested by the defendant as well as charge 7.—*Tyree v. Lyon,* 67 Ala. 1; *Teague v. Bass,* 131 Ala. 422; *Lehman v. McQueen,* 65 Ala. 572.

GREGORY L. & H. T. SMITH, *for appellee.*—It is not reversible error to assume the truth of facts shown by the undisputed testimony and not controverted between the parties.—*Carter v. Chambers,* 79 Ala. 223; *Stephenson v. Wright,* 111 Ala. 579. When a cause of action accrues there is a right to all the consequent damages which may ensue.—*Fail, et al. McRae,* 36 Ala. 61; *Liddell v. Chidester,* 84 Ala. 510; *Wilkinson v. Black,* 80 Ala. 331; *Strauss v. Merteif,* 64 Ala. 307. The refusal of defendant to further perform and their express repudiation constituted a total breach.—*Trustees v. Turner,* 71 Ala. 434, and when this occurs the other party may sue for the entire damages which will accrue without waiting for the time for the performance of each item to run.—*Freer v. Denton,* 61 N. Y. 492; *Donivan v. Sheridan,* 24

N. Y. Sup. 116; *Windmuller v. Pope,* 14 N. E. Rep. 406; *Remy v. Olds,* 88 Cal. 537, s. c. 26 Pacific 355; *Norman S. Jewitt v. S. P. Brooks,* 134 Mass. 505; *Davis v. Grand Rapid School Fur. Co.,* 24 S. E. 630; *Hobbs v. Mohr,* 30 Atlantic 110; *McCormick v. Bassal,* 46 Iowa 235; *Crabtree v. Messersmith,* 19 Iowa 235; *Dingley v. Oler,* Fed. 372.

The contract was not void for uncertainty.—*Merril v. Bell,* 14 Miss. 6; *City of Stockton v. Webber,* 33 Pac. 332. The time of payment is not uncertain.—*Culver v. Caldwell,* 137 Ala. 133; *Crass v. Scruggs,* 115 Ala. 264; *Jones v. Eisler,* 3 Kan. 128; *Lewis v. Tipton,* 10 Ohio St. 88. A stipulation to do a subsequent act cannot be a condition precedent.—*Bailey v. White,* 3 Ala. 330; *Mullins v. Cabaniss,* Minor 21; *Drake v. Goree,* 22 Ala. 409. Where a part of the consideration is to be received before the other stipulation can mature the two are severable and independent.—*Fulenwider v. Rowan,* 136 Ala. 287. The failure of one party to perform an independent stipulation does not discharge the other party to perform his independent stipulation.—*Hieronymous Bros. v. Bienville W. S. Co.,* 131 Ala. 347. Counsel discuss written charges given and refused but cite no authority except as to charge 2 given at the request of plaintiff to which they cite the following: *Samples v. Guyer,* 120 Ala. 611; *Thomas & Trott v. Ellis & Co.,* 4 Ala. 108; *Meriweather v. Taylor,* 15 Ala. 735; *Kirkland v. Oates,* 25 Ala. 465; *Hawkins v. Gilbert & Maddox,* 19 Ala. 54; *Hunter v. Waldron,* 7 Ala. 753; *Aiken v. Bloodgood,* 12 Ala. 221; *Strauss v. Meertief,* 64 Ala. 299; *McTighe & Co. v. McLand,* 93 Ala. 626; *M. & O. R. R. Co. v. Nicholas,* 98 Ala. 118; *Ovendorff v. Tallman,* 90 Ala. 441; *Foster v. Gressett,* 29 Ala. 393; *Dent v. Long,* 90 Ala. 172; *Howard v. Thompson Lumber Co.,* 50 S. W. 1092; Clarke on Contracts, page 676, and citations.

DOWDELL, J.—This is an action brought by the plaintiff, E. H. Robertson, appellee here, against the Byrne Mill Company, a firm or partnership, for the breach of a contract entered into by said Byrne Mlil Company with one Warren Hamilton, and which contract was by said Hamilton assigned to the plaintiff. The

complaint as amended contained two counts. In the first count the contract sued on is set out in full, and by reference thereto is adopted into the second count. The alleged breach of the contract consisted in a failure and refusal on the part of the defendants to deliver to the plaintiff certain lumber described in the complaint, and which plaintiff claims, under the terms of the contract, the defendants were bound to deliver. To both counts of the complaint as amended the defendants filed demurrers, which were upon consideration by the court overruled. The defendants then moved to strike certain parts of the complaint, which motion was by the court overruled. Pleas were then filed, to several of which demurrers interposed by the plaintiff were sustained.

The main question raised by these pleadings and rulings is the proper construction of the contract sued on; the insistence of the appellants being that the contract is void for indefiniteness and uncertainty. This contention is chiefly based on the following provisions contained in the contract: "The said Byrne Mill Company hereby agrees to manufacture, sell, and deliver to the said Warren Hamilton, and the said Warren Hamilton agrees to buy and receive from the said Byrne Mill Company at their mill near Stockton, Ala., the following lumber, to-wit: All of the sap boards, other than what is known as 'mill culls,' they make while operating their mill on other regular orders. The said Warren Hamilton is to receive said sap boards as they run, consisting of number 2 common and better, and also any boards that will not grade heart face; width of said sap boards to run from three inches and up, and length of ten, twelve, fourteen, sixteen, eighteen, and twenty feet, but no more than ten per cent to run ten feet. The said Byrne Mill Company agrees not to select or pick out anything from the side board run of the mill, except what will go one by four and up, heart face; but all the sap boards of all widths are to be considered in this agreement and are to be delivered as they run at the mill, end of the roller way at the end of the dry kiln at said mill. * * * The price to be paid by the said Warren Hamilton for the sap boards shall be five dollars and fifty ($5.50) per thousand feet superficial (no odd

lengths counted), as fast as loaded on cars at Mobile, sixty days negotiable bankable paper, for all lumber, dressed or rough, and for all dry kiln lumber shipped by said Warren Hamilton previous to the erection and operation of his planing mill." It may be said that the contract was unskillfully drawn; but it is not so indefinite and uncertain in its terms as to render the ascertainment of its meaning or of the intention of the parties to it impossible. When it can be done consistently with the expressed intention of the parties, that construction should be given to contracts which will uphold, rather than defeat, them . A maxim of the law is "Ut res magis valeat quam pereat." Here the intention is clearly expressed on the one part to sell and on the other to purchase certain lumber, and the further intention of the parties that the seller shall deliver at a particular place certain lumber described in the contract and the purchaser to receive and pay for the same at a price fixed, namely, "five dollars and fifty cents ($5.50) per thousand feet superficial as fast as loaded on cars at Mobile, sixty days negotiable bankable paper."

It is insisted that the provision "as fast as delivered on cars at Mobile" is a contingency that may never happen, and, as no obligation is imposed by the contract to load on the cars at Mobile, the contract is clearly rendered indefinite as to time of payment. Whether there is an implied promise, or not, in this provisions on the part of the plaintiff to load the lumber on the cars at Mobile, we need not decide. It is evident that this provision was inserted for the benefit of the plaintiff, and without it, no time being definitely fixed, the law would imply a reasonable time. The question here involved is fully covered by the principle laid down in *Culver v. Caldwell*, 137 Ala. 132, 34 South. 13.

It is further insisted that in the phrase employed in the contract, "negotiable bankable paper," the words "bankable paper" are meaningless. If this were true, the word "bankable" might be regarded as surplusage without altering or changing the contract, as affecting the intention of the parties entering into it; but the

words "bankable paper" are not without a definite or certain meaning. See 5 Cyc. p. 226.

The stipulation in the contract to deliver the lumber is an independent covenant. By the express terms of the contract it is made a condition precedent to the duty of payment by the purchaser. Therefore, a failure or refusal to deliver would constitute a breach, for which an action would immediately lie. However, where the contract is to be a continuing one, with stipulation for the delivery of goods by the seller at different times, and the payments to be made by the purchaser as the goods are delivered, we are not to be understood as holding that the seller would not be justified in terminating the contract to further deliver upon the failure and refusal of the purchaser to perform his part of the contract by payment for the goods already delivered; but such right to terminate the contract by the seller may be waived expressly or by conduct.

By the express terms of the contract it is provided "that the said Byrne Mill Company have nothing to do with the planing mill and dry-kiln business, but said Warren Hamilton shall have full charge and control of everything pertaining to said dry-kiln and planing mill." We think from this it is made perfectly plain that the provisions in the contract relating to the planing mill and dry kiln were inserted for the sole benefit of Warren Hamilton, or his assigns, and in no manner affect the contract as to the sale and delivery of the lumber as stipulated.

It is also insisted that, in the provision in the contract fixing the price to be paid for the lumber, the clause "for all lumber, dressed or rough, and for all dry-kiln lumber shipped by said Warren Hamilton previous to the erection and operation of his planing mill," renders the contract incomplete, because the same "fixes the price for only an undetermined portion of the lumber agreed to be sold, namely, such as might be shipped previous to the erection and operation of a planing mill, and no price for that which might be shipped subsequent to the erection and operation of the planing mill." We think this is a strained construction to put upon said provis-

ion in the contract. The provision is "for all lumber, dressed or rough, and for all dry-kiln lumber shipped by said Warren Hamilton previous to the erection and operation of his planing mill." It is evident that the word "all lumber, dressed or rough," included all dry-kiln lumber shipped by said Hamilton. The words "previous to the erection and operation of his planing mill" are limited to the "dry-kiln lumber shipped," and not to "all lumber, dressed or rough." The use of the word "for," as employed in the clause, we think clearly indicates this.

The contract contains the following provision: "It is distinctly understood and agreed that the said Hamilton or the Byrne Mill Company has the right to transfer or assign this contract and all rights and liabilities assumed herein to any person or persons." From this it is manifest that it was not the intention of the parties that the provision relating to the skill of Warren Hamilton should any wise affect the contract as to the sale and purchase of the lumber in question. The matter of skill of Warren Hamilton relates entirely to the use of the dry kilns and planing mill, and, as we have said above, these provisions in the contract are solely for the benefit of said Hamilton.

By the terms of the contract, no duty or obligation rested upon the defendants to operate their mill. The extent of the obligation imposed was to deliver certain described lumber that they might make while operating their mill "on other regular orders." It is evident, therefore, that damages for failure to deliver lumber based upon a prospective operation of the mill would be entirely speculative. This feature of the contract, we think, clearly differentiates this case from that class of cases cited by counsel for appellee, where the recoverable damages in an action for the breach of the contract before the time of its completion may be estimated and computed to the end of the contract period. Upon like principle in this suit only such damages can be recovered as existed at the time of the commencement of the action and resulting from a nondelivery of the lumber up to that time. It would be an anomaly to hold that damages which could not be recovered at the commence-

ment of the suit because of being speculative might nevertheless, by results transpiring subsequent to suit brought, become recoverable in the particular suit. Nor do we think in this case that the situation is relieved by the averment in the complaint that the defendants notified the plaintiff that they would not perform the contract.

The contract contained the following clause: "This agreement to remain in full force and effect for one year; but said Hamilton has the right to renew the same for five years additional." We construe this to mean nothing more nor less than an option to Hamilton to extend the contract for a period of five years. The same consideration which supported the original contract was sufficient to support the extended contract; and in the exercise of this option by Hamilton it was not necessary for the parties to enter into any new writing to save it from the statute of frauds. The original contract itself, which was in writing, was sufficient to this end, and in the exercise of the option or right any unequivocal notice by Hamilton to the defendants that the contract would be continued for five years, given before the expiration of the first period, would be sufficient. We do not think that the statute of frauds has any application.

While the first count of the complaint contains an averment of the assignment of the contract to the plaintiff, the second count does not. The second count does by reference adopt into it the contract as set out in the first count, but does not by such reference adopt the averments of the first count relative to the assignment of the contract. In this respect the second count of the complaint was defective, and subject to demurrer.

The motion to strike from the complaint that portion relating to damages based upon the future operation of the mill by the defendants was the proper mode of reaching the objectionable matter, and should have been sustained, although the same end might have been accomplished on objections to evidence or requested instructions to the jury.—*Kennon v. W. U. Tel. Co.,* 92 Ala. 399, 9 South. 200; *Daughtery v. W. U. Tel. Co.,* 75 Ala. 168, 51 Am. Rep. 435.

[Patt v. Gerst.]

The foregoing views will point out sufficiently the errors committed on the trial, and will serve as a guide upon another trial. For the errors indicated, the judgment of the court will be reversed, and the cause remanded.

Reversed and remanded.

Tyson, C. J., and Anderson, and McClellan, JJ., concur.