(77 South. 748)

J. C. LYSLE MILLING CO. v. NORTH ALABAMA GROCERY CO. (7 Div. 795.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Jan. 24, 1918.)

1. SET-OFF AND COUNTERCLAIM ☞35(1) — "RECOUPMENT"—LIQUIDATION OF DEMAND.

Recoupment is an innovation upon the strict rules of law sanctioned by the courts for the purpose of doing equity between the parties, where it could not be otherwise attained without an expensive or circuitous process, and recoupment being distinguished from set-off in that it is confined to matters arising out of the transaction or contract upon which suit is brought, not depending upon whether the matter be liquidated or unliquidated, a defendant may, under plea of recoupment, recover damages sustained by him which arose from defendant's breach of the contract on which suit was founded, or from his violation of the duty imposed by contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Set-Off; Recoupment.]

2. PLEADING ☞139, 143—RECOUPMENT.

Under Code 1907, § 5860, providing for judgment over in set-off, and section 5865, declaring that on plea of recoupment, if the claim or demand of the defendant equals the claim or demand of the plaintiff, judgment must be rendered for defendant, and, if it exceeds the claim or demand of plaintiff, judgment must be rendered against him in favor of defendant for such excess and all costs, a recoupment must be specially pleaded to be available as a defense; that is, it must contain the same averments which would make it a good complaint if suit were in the first instance brought on the claim sought to be recouped.

3. SALES ☞354(9) — ACTIONS—PLEA—SUFFICIENCY.

In an action for the purchase price of flour, pleas in recoupment setting forth defendant's damage on account of plaintiff's nondelivery of certain flour, which did not aver that defendant was able, ready, and willing to comply with its part of the contract, and to receive and pay for flour upon arrival, are insufficient; the averment that the shipments were to be made upon draft with bill of lading attached not relieving defendant of the necessity of averring ability and readiness to comply with the contract.

4. SALES ☞354(9) — ACTIONS — PLEA IN RECOUPMENT—SUFFICIENCY.

In an action for the purchase price of flour delivered, where defendant pleaded in recoupment plaintiff's failure to deliver certain other flour contracted for, a plea which did not allege that defendant had already paid for flour received under an open account, or that it had offered to pay for the same if payment was due under the contract, is defective; it not appearing that when defendant demanded delivery of the remainder of the flour it was not in such default as to entitle plaintiff to rescind.

5. SALES ☞174 — EXCUSE FOR FAILURE TO DELIVER.

Where plaintiff agreed to sell defendant 800 barrels of flour, 175 barrels to be delivered on an open account and the other shipments to be made upon draft with bill of lading attached, the agreement to sell on an open account is so connected with the contract to deliver the remainder under draft with bill of lading attached that defendant's failure to pay for the flour delivered on open account would constitute a breach of the entire contract, warranting plaintiff in refusing to make further delivery.

6. PRINCIPAL AND AGENT ☞99 — LIABILITY OF PRINCIPAL—SCOPE OF AUTHORITY.

While a principal is bound by the acts of his agent within the apparent scope of his authority, the authority of an agent to bind the principal must be actually apparent, and the party dealing with the agent must in good faith rely on such authority.

7. PRINCIPAL AND AGENT ☞120(1)—LIABILITY OF PRINCIPAL—AUTHORITY OF AGENT—EVIDENCE.

In determining the apparent authority of an agent to bind a principal by a contract of sale, all the attendant and material facts and circumstances are admissible.

8. EVIDENCE ☞455 — PAROL — MEANING OF PARTICULAR PHRASES.

In an action for the purchase price of flour, where defendant counterclaimed for plaintiff's breach of contract in failing to deliver certain other flour, testimony as to the meaning of the phrase "guaranteed basis 70¢," used in the contract, by plaintiff, the miller, is admissible to indicate the intent of the parties.

Appeal from City Court of Gadsden; John H. Disque, Judge.

Assumpsit by the J. C. Lysle Milling Company against the North Alabama Grocery Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The following are the pleas:

3. Defendant says that at the time said action was commenced plaintiff was indebted to the defendant in the sum of $4,000 as damages for the breach of a contract hereinafter more fully set forth, which the defendant hereby offers to set off against the demand of the plaintiff, and claims judgment for the excess. The damages herein claimed arise out of a contract breached by the plaintiff, entered into by and between the plaintiff and defendant on, to wit, the 3d day of July, 1914, whereby the plaintiff agreed and contracted to sell to the defendant 800 barrels of flour on a basis of $5.15 per barrel for a certain grade of flour known as White Crest, said flour to be shipped by the plaintiff to the defendant at any time before the 28th day of October, 1914, on demand of the defendant, on terms as follows, to wit: Draft with bill of lading attached; said flour to be paid for on arrival at Gadsden, except as to 175 barrels of flour, which was agreed to be delivered to defendant on open account. And defendant avers that after the plaintiff, under the said agreement, had shipped the defendant 175 barrels of said flour, then the defendant demanded of the plaintiff, on the 3d day of September, 1914, that 175 barrels of the remainder of said flour so contracted for be shipped each week on the terms as contracted for and as above stated, and the defendant avers that the plaintiff wholly refused and failed on said demand to ship any flour other than the 175 barrels that had already been delivered on said contract. And defendant avers that it was ready, able, and willing to comply with the terms of the contract on its part. And defendant avers that it suffered damages in the sum of $4,000 on account of the failure of the plaintiff to ship the remainder of said flour.

Pleas 4 and 5 allege the same state of facts as alleged in plea 3, except that in plea 4 it

is alleged that the agreement was for 700 barrels on a basis of $5.05, and in plea 5 it is alleged that the agreement was to ship 1,500 barrels on a basis of $5.15 per barrel. Neither plea 4 nor plea 5 alleges defendant's readiness, ability, or willingness to receive and pay for the flour ordered out.

The plaintiff filed replications setting up the failure of defendant to pay for the 175 barrels delivered and its annulment of the contract for the reason of their failure to pay, as it had a right to do; also a provision of the contract that the order was booked for 60 days shipment, with the privilege of extending the booking 30 days; that defendant did not ask the privilege of extending the booking for 30 days, and the contract terminated 60 days from the date thereof, and on September 1, 1914, and that within the said 60 days the defendant ordered out only one carload of flour under said contract, and that the plaintiff did deliver to the defendant the flour so ordered out.

Sterling A. Wood, of Birmingham, and Dortch & Allen, of Gadsden, for appellant. Goodhue & Brindley, of Gadsden, for appellee.

THOMAS, J. The suit was for the recovery of the contract price of flour delivered by appellant, and, on pleas of recoupment, resulted in a judgment over for the defendant.

[1, 2] Recoupment is an innovation upon the strict rules of law, sanctioned by the courts for the purpose of doing equity between the parties, where it could not be otherwise attained or could not be attained without an expensive or circuitous process. Mason & Craig v. Heyward, 3 Minn. 182 (Gil. 116); Stow v. Yarwood et al., 14 Ill. 424; Upton & Co. v. Julian & Co., 7 Ohio St. 95; Ives v. Van Epps, 22 Wend. (N. Y.) 155; Hinsdell v. Weed, 5 Denio (N. Y.) 172; Batterman v. Pierce, 3 Hill (N. Y.) 171.

Mr. Waterman distinguishes set-off from recoupment as follows:

"(1) In being confined to matters arising out of and connected with the transaction or contract upon which the suit is brought; (2) in having no regard to whether or not such matter be liquidated or unliquidated; and (3) that the judgment is not the subject of statutory regulation, but controlled by the rules of the common law." Waterman on Set-Off (2d Ed.) § 464.

Our statutes, however, provide for a judgment over in set-off (Code, § 5860), and in recoupment—

"if the claim or demand of the defendant equals the claim or demand of the plaintiff, judgment must be rendered for the defendant; if the claim or demand of the defendant exceeds the claim or demand of the plaintiff, and the plaintiff be the party liable to its satisfaction, judgment must be rendered against him in favor of the defendant for such excess and all costs." Code, § 5865.

See authorities collected in T. L. Farrow Mercantile Co. v. Riggins, 14 Ala. App. 529, 71 South. 963. It has been declared that the statute has not enlarged the class of demands which may be the subject of recoupment. Martin Dumee & Co. v. Brown et al., 75 Ala. 442; Ewing & Gains v. Shaw & Co., 83 Ala. 333, 335, 3 South. 692; Behrman & Winter v. Newton, 103 Ala. 525, 15 South. 838; Grisham v. Bodman, 111 Ala. 194, 20 South. 514.

Under a plea of recoupment the defendant may recover damages sustained by him which grew out of the matter set forth in the complaint, or which arose from plaintiff's breach of the contract on which the suit is founded, or from his violation of a duty imposed by the contract. Behrman & Winter, v. Newton, supra; Theo Poull & Co. v. Foy-Hays Const. Co., 159 Ala. 453, 461, 48 South. 785; Mizell v. Farmers' Bank of Clio, 180 Ala. 568, 573, 61 South. 272.

Since the enactment of the statute (Code, § 5865), recoupment must be specially pleaded to be available as a defense; that is to say, must contain the same averments which would make it a good complaint if the claim sought to be set off or recouped were a suit brought thereon in the first instance. Waterman on Set-Off, 598; Crawford v. Simonton, 7 Port. 110; Lang v. Waters, 47 Ala. 624; Sledge v. Swift, Murphy & Co., 53 Ala. 110, 114; Lawton v. Ricketts, 104 Ala. 430, 16 South. 59; Ansley v. Bank of Piedmont, 113 Ala. 467, 21 South. 59, 59 Am. St. Rep. 122; Carolina Portland Cement Co. v. Ala. Const. Co., 162 Ala. 380, 385, 50 South. 332; Berlin Machine Works v. Ewart Lumber Co., 184 Ala. 272, 63 South. 567; Bixby-Theisen v. Evans, 186 Ala. 507, 512, 65 South. 81.

[3] A complaint for a breach of contract for the failure of a purchaser to buy a stone was declared to be insufficient—

"if it fails to aver either the ability, readiness, or willingness of plaintiff to furnish the stone within the time required by the contract, or that the stone had been delivered thereto." Terrell v. Nelson et al., 177 Ala. 596, 58 South. 989; Terrell v. Nelson et al., 74 South. 929, 931;[1] Elliott v. Howison, 146 Ala. 568, 583, 40 South. 1018; Moss v. King et al., 186 Ala. 475, 481, 65 South. 180; Saunders v. McDonough et al., 191 Ala. 119, 134, 67 South. 591; McGehee v. Hill, 4 Port. 170, 176, 29 Am. Dec. 277.

As early as McGehee v. Hill, supra, it was declared as a settled rule of law that:

"When a contract is dependent, as where one agrees to sell and deliver, and the other agrees to pay on delivery, in an action for nondelivery, it is necessary for the plaintiff to aver and prove a readiness to pay on his part, whether the other party was ready at the place to deliver or not. * * * Hence, in such cases, if either vendor or vendee wish to compel the other to fulfil his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement, on his part, or a readiness and ability; and an averment to that effect is always made in the declaration containing dependent undertakings, and that averment must be supported by proof."

This announcement of the rule is rested on Bank of Columbia v. Hagner, 1 Pet. 465, 7 L. Ed. 219. This rule was reaffirmed in Moss v. King, supra.

[1] 199 Ala. 436.

Tested by the foregoing authorities, the fourth and fifth pleas of recoupment were subject to the demurrer, overruled by the trial court, that the pleas failed to aver that the defendant was ready, willing, and able to comply with its part of the contract, to receive and pay for the flour upon arrival, and the fact that the shipments were to be made upon draft with bill of lading attached did not relieve the defendant of the necessity to make this material averment in his pleas.

[4] Moreover, the third plea is not sufficiently definite in averment that defendant had paid for the 175 barrels of flour received by it from the plaintiff, under the contract, as it had contracted to do, or that it was not so in default as to such payment as to authorize a rescission of the whole contract. It should have been averred that the defendant was not only ready and able to pay, but was willing to pay, and that it offered to pay, in compliance with the contract provisions, for said 175 barrels of flour, or else that payment therefor was excused by the contract. For aught that appears in the plea, when, on the 3d day of September, 1914, the defendant demanded of the plaintiff "the remainder of said flour so contracted to be shipped each week," it was in default for nonpayment of the contract price for the said 175 barrels already received. If such was the fact, no rule of law would require the seller to make further shipments under the contract until receipts of payment of the agreed consideration for the deliveries actually made. Byrne Mill Co. v. Robertson, 149 Ala. 273, 284, 42 South. 1008. For the failure of the trial court to sustain demurrer to pleas 3, 4, and 5, the cause must be reversed.

[5] Appellant insists that, on authority of Rock Island Sash & Door Works v. Moore-Handley Hardware Co., 147 Ala. 581, 41 South. 806, the contract to deliver 175 barrels of flour on open account was not so "connected" with the contract to deliver the remainder under draft with bill of lading attached that the failure to pay for the 175 barrels delivered would constitute a breach of the entire contract. Such is not the true construction of the contract. The averment of plea 3 shows as indivisible contract—that entered into between plaintiff and defendant on, to wit, the 3d day of July, 1914— whereby the plaintiff contracted to sell the defendant 800 barrels of flour of that certain grade known to the trade as White Crest, on basis of $5.15 per barrel—

"said flour to be shipped by the plaintiff to the defendant at any time before the 28th day of October, 1915, on demand of the defendant, on terms as follows, viz.: Draft with bill of lading attached; said flour to be paid for on arrival at Gadsden except as to 175 barrels of flour which was agreed to be delivered to defendant, and was delivered to defendant, on open account."

This agreement, without other averment of its terms, did not obligate the plaintiff to ship the first 175 barrels on open account, and relieve the defendant of the duty to pay on receipt of same or within a reasonable time thereafter. There is no averment of a general custom of the market, governing such sales, that relieved the buyer of his obligation to pay within the designated time, and compelled the seller to deliver subsequent installment shipments on the contract, regardless of default in payment for installments actually delivered; nor is there any averment that any such custom was made a part of the contract sued on, or that the contract was made with reference thereto. Crandall Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 157, 69 South. 964.

The order construed in the Moore-Handley Hardware Company Case, supra, was that of the defendant for one carload of sash, with the privilege of taking three carloads at a certain per cent. of the net price, the specifications for the first car to be furnished within 20 days. Held, that the plaintiff was liable for the failure to furnish the other cars, although the defendant purchaser did not furnish specifications for the first car within the time agreed upon.

The decision in the Rock Island Sash & Door Works Case, supra, rested primarily on Johnson & Thornton v. Allen & Jemison, 78 Ala. 387, 391, 56 Am. Rep. 34, where the contract was for the delivery of coal in installments at a specified price. The court in the latter case said:

"The contract is for the sale of a determinate quantity of coal, to be delivered by installments; the plaintiffs waiving the right and option to fix the installments, limited by the provision that no installment or installments in one month should exceed 200 tons; and the orders were to be given between specified dates. A delivery of only a part of the quantity ordered, or a failure to deliver any part of it, does not terminate the contract, unless the plaintiffs saw proper to so treat and regard it. The contract continues, as to future orders, during the period stipulated. Each delivery is considered in the nature of a separate and distinct contract."

Thus the plaintiff's right was recognized to treat the contract as breached by the failure to deliver any substantial part of an installment. It is only where there has been a waiver of the breach of the contract, it was held, that the stipulations as to future orders are binding during the period of the contract breached.

In Worthington & Co. v. Gwin, 119 Ala. 44, 24 South. 739, 43 L. R. A. 382, the correct distinction was made by Chief Justice Brickell—that the right to claim a discharge of the whole of a severable contract depends on whether the breach was inconsistent with an intention to be further bound by its terms, or whether it was such as to defeat the purpose of the contract, and not on whether the act constituting the breach was merely inconsistent with certain of the minor stipulations of the contract.

In Hieronymus Brothers v. Bienville Water Supply Company, 131 Ala. 447, 454, 31 South. 31, 32, Mr. Justice Sharpe generally states the rule as to rescission of the whole contract for the breach of a condition therein. He says:

"Ordinarily, where one party to a continuing contract refuses to perform his part of it, the other party may treat the contract as ended, and, though there are exceptional cases, this principle is in general applicable where the default consists in a failure to pay an installment for services or goods to be furnished from time to time." Drake v. Goree, 22 Ala. 409; Elliott v. Howison, supra; Lowy v. Rosengrant, 196 Ala. 337, 71 South. 439; J. M. Ackley & Co. v. Hunter-Benn Co., 166 Ala. 295, 309, 51 South. 964; South Fork Canal Co. v. Gordon, 6 Wall. 561, 18 L. Ed. 894; Norrington v. Wright, 115 U. S. 188, 205, 6 Sup. Ct. 12, 29 L. Ed. 366; Cleveland Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; Pope v. Allis, 115 U. S. 363, 371, 6 Sup. Ct. 69, 29 L. Ed. 393; Dobbins v. Higgins, 78 Ill. 440; Bean v. Miller, 69 Mo. 384; McDonald et al. v. Kansas City Co., 149 Fed. 360, 79 C. C. A. 298, 8 L. R. A. (N. S.) 1110.

The contract construed in Rock Island Sash & Door Works v. Moore-Handley Hardware Co., supra, was held to be severable, yet the decision in that case was not in conflict with the rule recognized in Worthington & Co. v. Gwin, supra, and Hieronymus Bros. v. Bienville Water Supp. Co., supra., and it is not controlling of the case sought to be made by plea 3.

[6, 7] The appellant contends that Fitzhugh was one of its sales agents, without authority to do more than take orders for flour, and forward the same to plaintiff, at its business office in Leavenworth, Kan., for confirmation or rejection, and that none of the sales in question were confirmed by the plaintiff, except that of July 3, 1914. The appellee, on the other hand, contends that said Fitzhugh was the general agent of the plaintiff company, with power to bind it by his sales, without confirmation, and that the sales in question were actually confirmed by the plaintiff.

It is not controverted that an agent whose authority is limited to taking and forwarding orders to the principal for confirmation, has no authority to bind his principal without confirmation or ratification by the principal. Simon & Sons v. Johnson, 101 Ala. 368, 13 South. 491; Richardson v. Olanthe Mill & Elevator Co., 167 Ala. 411, 52 South. 659, 140 Am. St. Rep. 45; Gould v. Cates Chair Co., 147 Ala. 629, 634, 41 South. 675; Holmes v. Bloch, 196 Ala. 322, 71 South. 670.

"A principal is only responsible for acts of his agent performed within the scope of his authority, and * * * to hold the principal to such responsibility, a third party in dealing with the agent must ascertain his authority, and know that he is acting within the apparent scope of his authority. It is not difficult for persons dealing with one assuming to act as the agent of a private individual to ascertain the nature and extent of his authority, but in dealing with an agent who is one of a great number of authorized agents of a large corporation a different condition is presented, and the public

201 ALA.—15

in dealing with such an agent is compelled to rely upon the apparent authority of the agent, which is that authority which the principal has held the agent out as possessing, or which he regularly and habitually exercises in transacting his principal's business, or which the principal has permitted the agent to represent that he possesses and which the principal is estopped to deny. When a third party, in dealing with an agent, has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligations to inquire into the agent's actual authority, but the authority of the agent to bind the principal must have been actually apparent, and the party dealing with him must have dealt with the agent in good faith relying on such authority in the exercise of reasonable prudence. Montgomery Furniture Co. v. Hardaway, 104 Ala. 100, 16 South. 29; Singer Mfg. Co. v. McLean, 105 Ala. 316, 16 South. 912; Patterson v. Neal, 135 Ala. 477, 33 South. 39; Gibson v. Snow Hardware Co., 94 Ala. 346, 10 South. 304." Hill v. Southern Railway Co., 6 Ala. App. 488, 491, 60 South. 450, 451.

Mr. Mechem (Law of Agency [2d Ed.] vol. 1, § 726, p. 513) declares of the apparent authority of the agent to bind the principal that it must be actually apparent, and that the party dealing with him must have dealt with the agent in good faith, relying on such authority in the exercise of reasonable prudence. See, also, same work, sections 720–729, pp. 509–515.

The appellant did business in various states through agents. The agent Fitzhugh's authority to make a binding contract with appellee at the time of the taking of the order for the flour is the controverted question of fact. All of the attendant material facts and circumstances entering into the taking of said order by the agent, to the confirmation thereof or action thereon by the principal, should have been permitted in evidence to aid the jury in drawing a reasonable inference as to the authority vel non of such agent at the time the order was taken. On the question of agency, authority of agents, and proof on which authority may be shown, see Roberts & Sons v. Williams, 73 South. 502;[2] Holmes v. Bloch, supra; Gould v. Cates Chair Co., supra; Edwards v. Kilgore, 192 Ala. 343, 68 South. 888; Wheeler v. Krohn et al., 9 Ala. App. 409, 64 South. 179.

[8] Throughout the correspondence relating to the contract in question there occur such expressions as "guaranteed basis 70¢," and "guaranteed against decline on basis 72¢ wheat." That the plaintiff was not a speculator in wheat, but was a miller engaged in converting that cereal into flour, made it competent to show that when sales of flour, or order therefor, were accepted by plaintiff for future delivery, plaintiff bought wheat to cover the sale or order. Testimony to this effect, offered by witnesses Lysle and Fitzhugh, should have been admitted by the trial court. Moreover, such evidence was material to a proper understanding of the contract, or of the expressions therein touching a guaranteed basis and a guaranty against decline, etc., and also tended to aid

[2] 198 Ala. 290.

the jury in drawing the reasonable conclusion as to the authority of the agent who took and transmitted defendant's order for the flour the purchase price of which is made the basis of the present suit.

As the case will be tried again, we will not further discuss the evidence.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.