[Civ. No. 18812.   First Dist., Div. Two.   May 17, 1961.]

DAN KELLER, Appellant, v. PACIFIC TURF CLUB
(a Corporation) et al., Respondents.

J. A. London, Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Appellant.

Donahue, Richards & Gallagher, Joseph T. Richards and Thomas Schneider for Respondents.

KAUFMAN, P. J.—Plaintiff, Dan Keller, seeks to recover damages for breach of contract from Pacific Turf Club, a California corporation, and its officers, hereafter referred to as defendants. At the close of plaintiff's case, the court granted defendants' motion for a nonsuit and plaintiff appeals. We conclude that the matter should have gone to the jury.

The granting of a motion for a nonsuit is warranted " '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' (*Card* v. *Boms* (1930), 210 Cal. 200, 202 [291 P. 190]; see, also, *Golceff* v. *Sugarman* (1950), *ante*, [36 Cal.2d 152] pp. 152, 153 [222 P.2d 665]; *Blumberg* v. *M. & T. Inc.* (1949), 34 Cal.2d 226, 229 [209 P.2d 1], and cases there cited.) 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from

the jury.' (*Estate of Lances* (1932), 216 Cal. 397, 400 [14 P.2d 768].) In other words, while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit . . ." (*Raber* v. *Tumin*, 36 Cal.2d 654 at p. 656 [226 P.2d 574] ; *Beal* v. *Blumenfeld Theatres, Inc.*, 177 Cal.App.2d 192, 193 [2 Cal.Rptr. 110]).

Stated in the light most favorable to the plaintiff, the evidence may be summarized as follows: Plaintiff, Dan Keller, also doing business as "West Coast Fertilizer," was in the business of hauling and selling manure to mushroom farmers throughout the state. Defendants operate the "Golden Gate Fields," a race track in Albany and Berkeley. On October 13, 1954, the parties entered into a written contract, whereby plaintiff agreed to remove all straw and manure from the stable area at Golden Gate Fields for each of the race meets during the one year immediately following the execution of the agreement for a consideration of $10,000. Plaintiff was to begin removing all straw and manure upon the arrival of the first horses for the racing meets scheduled to begin on November 1, 1954, and March 7, 1955. Plaintiff was authorized to dispose of the manure as he desired.

The contract also contained the following option provision: "15. Second party [plaintiff] hereby grants unto first party [defendant] the option, to be exercised by first party by notifying second party of such exercise, at least thirty days prior to the expiration hereof, [i.e. by September 13, 1955] to extend this contract for a period of one year from the termination date hereof; said one year extension to be upon all the terms, conditions and covenants herein contained, save and except that the consideration to be paid by first party to second party for any race meet during such extension is to be a total of $9000.00 for each such race meet; said $9000.00 to be paid by first party to second party upon the following basis. . ."

The next paragraph provided: "16. All notices to be given to first party shall be given to said first party, in writing, at Post Office Box 27, Albany 6, California; notices to be given to second party shall be given to said second party, in writing, at 691 Seventeenth Avenue, Menlo Park, California."

The agreement further provided that as security for plaintiff's performance, he was to deliver a corporate surety bond in the amount of $10,000. In lieu of this provision, however,

the parties on the same day [October 13, 1954] entered into
a supplemental agreement, providing that the plaintiff would
deposit in escrow with George E. Thomas, an attorney of the
law firm representing the defendants, certain documents, in-
cluding: (1) various certificates of registration and owner-
ship [i.e., pink slips; Veh. Code §§ 4450, 4454]; (2) a list of
plaintiff's current customers; and (3) an assignment of plain-
tiff's accounts receivable.

It was further agreed that the escrow holder was to keep
the above mentioned documents in his possession pending full
performance by the plaintiff, and that for the purposes of
the supplemental agreement, plaintiff's failure to remove
manure as agreed was deemed to be a failure of performance
on his part. Such failure of performance required the escrow
holder to deliver the documents in his possession to the de-
fendants and entitled the defendants to the right to perform
the balance of the agreement for the account of the plaintiff
and to attempt to dispose of the manure to plaintiff's cus-
tomers. Any profit realized thereby was to be paid to the
plaintiff; in the event of a loss, the plaintiff's vehicles could
be sold at a public sale.

The plaintiff negotiated the above mentioned agreements
with Mr. Fred Burgoyne, who was the controller and secre-
tary of the defendants. The agreements were drawn up by
defendants' attorneys. In performance of the contract, the
plaintiff removed all straw and manure during the race meets
in the fall of 1954 and the spring of 1955.

Early in June, 1955, the plaintiff wrote to defendants'
attorneys for certain information which appeared on the pink
slips held in escrow. On June 13, 1955, he again wrote and
thanked them [apparently for the information] and stated:
"I was given to understand that these slips will now be for-
warded to my lawyer. . ." The reply to the plaintiff from
defendants' attorneys, dated June 16, 1955, stated that the
pink slips were to remain in escrow for the term of the con-
tract unless the defendants chose to exercise their option to
extend the contract for an additional year. The letter con-
tinued: ". . . If this election is not made within the time
provided, that is, by sometime in September, 1955, the slips
are to be returned to you. If the option is exercised, the slips
will remain in escrow pending performance of your obliga-
tions for the balance of the term."[1] Plaintiff testified that

---

[1] i.e. until the termination of the second year of the contract, Sep-
tember-October, 1956.

the slips were not returned to him until 1958, about 2 months before the trial in this matter, which began in November, 1958.

In July, 1955, Mr. Burgoyne told the plaintiff that the defendants had exercised their option [i.e., thus extending the term of the contract for an additional year from October 13, 1955, to October 13, 1956]. At this time, the plaintiff began negotiations with Mr. Burgoyne for a new contract for a duration of 6 or 7 years.

In a letter dated October 26, 1955, the defendants proposed to the plaintiff a new agreement relating to the removal of manure from Golden Gate Fields, extending from January 1, 1956, to December 31, 1962, on the terms of the October 13, 1954, agreement subject to a number of modifications. The final paragraph of the letter of October 26, 1955, provided: "If the foregoing proposal meets with your approval, please indicate your acceptance on the enclosed copy of this letter, returning it to the undersigned. This proposal is made subject to the approval of the Board of Directors of Pacific Turf Club, Inc., and it is contemplated that, if accepted by you and approved by the Board, the understanding of the parties as reflected by this letter will become the subject of a formal contract to be entered into between the parties.

> "PACIFIC TURF CLUB, Inc.
> "/s/
> "By Fred Burgoyne, Secretary"

Plaintiff signed this letter to indicate his approval and returned it to the defendants.

By a letter dated November 28, 1955, defendants proposed to plaintiff an agreement relating to the removal of rubbish and dry garbage[2] from Golden Gate Fields. This letter concluded with language identical to that quoted above from the letter of October 26. Plaintiff, likewise, signed and returned this letter to the defendants. About December 1, 1955, plaintiff went to Burgoyne's office to discuss the above letters. Plaintiff indicated that he was in the process of forming a corporation and wanted the contracts to be in the name of the corporation.

Defendants sent copies of the letters of October 26 and November 28 to plaintiff's attorney, pursuant to his request on February 3, 1956. Defendants write: "These in fact are

---

[2]The agreement of October 13, 1954, related only to the removal of manure and straw.

our understandings with Mr. Dan Keller and the information contained therein can be incorporated in a formal contract as soon as possible, subject to final ratification of our Board of Directors.''

Mr. Burgoyne testified that at a meeting of the executive committee of defendants' board of directors early in April, 1956, the committee "approved the basic contents of the letters and directed me to have our attorney prepare a contract along these lines.''

Thereafter, plaintiff's attorney received the following letter, dated April 13, 1956, from defendants' attorneys:

''Sometime ago Mr. Keller and representatives of Pacific Turf Club reached an understanding concerning manure and garbage removal from Golden Gate Fields for the period ending December 31, 1962. Their understanding has now received the approval of the Board of Directors of Pacific Turf Club, Inc., and we enclose a proposed form of agreement to be made between the parties covering these matters. We shall appreciate your comments. You will note that the enclosed form follows closely in many particulars the form which the parties used before respecting manure removal.

''In connection with paragraph 5 of the agreement, relating to performance bond, we understand that Pacific Turf Club will be willing to adopt the security arrangement established by the supplemental agreement in the previous transaction, in the event that Mr. Keller does not find it feasible to provide this specified bond. If that is the case, we suggest that the security aspect of the matter again be handled by supplemental agreement.

''We shall look forward to hearing from you at your convenience.''

The proposed form of an agreement referred to in the letter was enclosed. Plaintiff's attorney then prepared another agreement, which changed certain terms, and forwarded it to defendants' attorneys under cover of a letter dated July 9, 1956, stating: "If the agreement is satisfactory I would appreciate your having Pacific Turf Club signed [sic] the same and return two signed copies to this office.'' Defendants' attorneys replied on July 12, 1956, and indicated that some of the proposed changes appeared quite serious and had been referred to them for their comment.

Thereafter, on August 15, 1956, defendants wrote to the plaintiff that the board of directors were not in accord with the suggested changes and informed the plaintiff that his

services would not be required for the forthcoming meet [September 10-October, 1956]. When the plaintiff arrived at Golden Gate Fields to begin performance for this meet, he was informed that the defendants had retained others to remove the manure, rubbish, and garbage, and he was not allowed to perform.

Plaintiff filed his complaint in this action on March 5, 1957, alleging two alternative causes of action: the first, based on defendants' exercise of the one-year option in the October 13, 1954, contract [i.e. extension of the contract from October 13, 1955, to October 13, 1956] and subsequent breach thereof; the second, based on the theory that the above quoted letters of October 26, 1955, and November 28, 1955, and defendants' retention of the pink slips constituted valid contracts subject only to the approval of defendants' board of directors and subsequent breach thereof. It is argued on appeal that the trial court erred in granting a nonsuit as to the first cause of action because there was evidence that the defendants had exercised their option, and as to the second cause of action, because there was sufficient evidence to support a finding that a written contract came into being immediately upon the approval of defendants' board of directors.

The first question on appeal is whether under the above summary of the facts, we can conclude that the matter should have gone to a jury on the issue of whether the option in the 1954 contract had been validly exercised to extend the agreement to October 13, 1956. We think so.

The record indicates that the trial court denied defendants' motion to strike the testimony tending to show the oral exercise of the option, and then granted defendants' motion for a nonsuit as to both causes of action. Thus, it appears that the basis for the granting of the nonsuit was the ground that the exercise of the option was required to be in writing under the statute of frauds (Code Civ. Proc., § 1973; Civ. Code, § 1624). Defendants argue that this ruling was proper as the agreement was one which by its terms could not be performed within a year from the making thereof. We cannot agree.

■ It is well settled that oral contracts invalidated by the statute of frauds, include only those which cannot be performed within that period. Even though a promise may not by its terms be performed within a year, yet, it is not inhibited by the statute if there is a possibility that it may be. The contract itself must contain language whose reasonable interpretation shows a clear intention that it cannot be performed

within the year (*Hollywood M. P. Equipment Co.* v. *Furer,* 16 Cal.2d 184, 187 [105 P.2d 299]). The agreement here in question is not by its terms incapable of performance within one year.

We note, however, that the agreement stated that the option is to "*be exercised by notifying* the second party . . . at least 30 days prior to the expiration date." The agreement does not indicate that the exercise of the option must be by written notice. The provision relating to written notices would appear to apply to notices to be given under the various terms of the contract and the supplemental agreement and does not necessarily indicate that the option could be exercised only by written notice, as defendants suggest. It is undisputed that the agreements were drawn up by defendants' attorneys, and that the plaintiff's education had ceased after the second grade. Therefore, under all the rules of construction, the agreement must be construed in favor of the plaintiff.

In an option contract, the optionor (plaintiff herein) stipulates that for a specified or reasonable period, he waives the right to revoke the offer. Since the optionor promises to perform the contract to which the option relates, subject to a condition at the discretion of the optionee, an option contract involves on the part of the optionor a unilateral promise to perform the obligations of the contract to which the option relates (*Warner Bros. Pictures, Inc.* v. *Brodel,* 31 Cal.2d 766, 772-773 [192 P.2d 949, 3 A.L.R.2d 691]).

Although there are conflicting views on the application of the statute of frauds to the oral exercise of an option created by a written contract, the exercise of which operates to extend the terms of the written contract (see 111 A.L.R. 1105; and *Beller* v. *Robinson* (1883), 50 Mich. 264 [15 N.W. 448], holding that an oral exercise of a three-year option to renew, in a written lease, violated the statute of frauds, we think that the rule in this state is that the statute is not applicable (*Pyrate Corp.* v. *Sorensen* (9 C.C.A., 1930), 44 F.2d 323, and *Sorensen* v. *Pyrate Corp.* (9 C.C.A., 1933), 65 F.2d 982; 2 Corbin on Contracts, § 450, p. 565). In *Pyrate Corp.* v. *Sorensen, supra,* the plaintiff entered into a written contract with the defendants, for the exclusive right to manufacture and sell Pyrate products in California for one year, with an option to renew the contract at the end of that period for four years, and at the end of the four-year period, for an additional five years. The contract referred only to a "privilege of renewal" and did not specify how it was to be exercised. The defend-

ants performed under the agreement for over two years without any written or formal notice of the exercise of the option. When the defendants attempted to terminate their relationship with the plaintiff, the plaintiff brought an action for breach of contract. In rejecting the argument of the bar of the statute of frauds, the Circuit Court of Appeals held that the defendants had manifested an intent to exercise the option and plaintiff had accepted the exercise, and pointed out that the original written contract satisfied the statute, since by its own terms, it provided for an extension at the election of the defendants.[3] Similar reasoning was used in *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 759 [161 P.2d 217, 162 A.L.R. 747], and *Columbia Pictures Corp.* v. *DeToth,* 87 Cal.App.2d 620, 625 [197 P.2d 580], although these cases involved the validity of an oral contract of employment for one year with options to renew or extend the agreement for additional one-year periods during each of the six succeeding years, to be exercised (like the option in the instant case) at least 30 days prior to the expiration of each preceding period of employment. Our Supreme Court, in reversing a judgment of dismissal, said at 26 Cal.2d 753, 759 [161 P.2d 217, 162 A.L.R. 747]: ". . . A contingency which may extend the period of employment for more than one year, such as that created by the option provisions here alleged, does not bring a contract within the operation of the statute [citations]." (Also *cf. Warner Bros. Pictures, Inc.* v. *Brodel, supra,* 31 Cal.2d 766, involving the extension of a written contract of employment, but no statute of frauds problem, and *Schmitt* v. *Felix,* 157 Cal.App.2d 642, 645 [321 P.2d 473], wherein this court [Division One], held that under a year lease granting lessees an option for an additional year lease on the same terms and

---

[3]*Byrne Mill Co.* v. *Robertson* (1907), 149 Ala. 273 [42 So. 1008], is also analogous to the instant case. There, a contract for the delivery of lumber contained the following clause: " 'This agreement to remain in full force and effect for one year; but said Hamilton has the right to renew the same for five years additional. . .' " The court said: ". . . we construe this to mean nothing more or less than an option to Hamilton to extend the contract for a period of five years. The same consideration which supported the original contract was sufficient to support the extended contract; and in the exercise of this option by Hamilton it was not necessary for the parties to enter into any new writing to save it from the statute of frauds. The original contract itself, which was in writing, was sufficient to this end, and in the exercise of the option or right any unequivocal notice by Hamilton to the defendants that the contract would be continued for five years, given before the expiration of the first period, would be sufficient. We do not think that the statute of frauds has any application." (P. 1012 [42 So.].)

conditions, a written exercise of the option was not necessary, as the tenants' prepayment of rental and the landlord's acceptance thereof constituted an exercise of the option.)

In view of the above, we think the question of whether the option in the 1954 contract had been exercised was one of fact for the jury. The same is true of the question of whether, if renewed, it was abandoned by the subsequent negotiations (*Ross* v. *Tabor,* 53 Cal.App. 605 [200 P. 971]; *Thomson* v. *Leak,* 135 Cal.App. 544 [27 P.2d 795]).

Judgment of nonsuit reversed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied June 16, 1961, and respondents' petition for a hearing by the Supreme Court was denied July 12, 1961. Gibson, C. J., did not participate therein. Traynor, J., was of the opinion that the petition should be granted.